### Richmond

JOHN LOUIS GARZA

V.

COMMONWEALTH OF VIRGINIA

Record No. 831726.

November 30, 1984.

Present: All the Justices.

560

*James R. Swanson (Phillips, Doherty & Swanson*, on brief), for appellant.

*Karen A. Laserson, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

John Louis Garza was tried by a jury and convicted of two offenses: possession with intent to distribute more than five pounds of marijuana, in violation of Code § 18.2-248.1; and possession of cocaine, a Schedule II controlled substance, in violation of Code § 18.2-250. Garza was sentenced to 15 years for the marijuana offense and 2 years for the cocaine offense.

On appeal, Garza assigns two errors. First, he contends the affidavit was insufficient to support the issuance of the search warrant that was relied on to seize the illegal drugs. Second, he contends the affidavit was filed in the wrong place. Garza argues that on either ground his convictions must be overturned. We disagree.

Garza was stopped by a State Trooper for speeding on Interstate 81 in Roanoke County. Garza did not have an operator's license. As a result, he was arrested for speeding and driving with-

out an operator's license and taken to the City of Salem-Roanoke County Jail. A passenger in Garza's car drove the vehicle to the jail's parking lot and left it there.

At the jail, Garza was unable to post bond. Consequently, he was incarcerated. During a body search made incident to Garza's incarceration, a sheriff's deputy discovered a folded dollar bill wrapped in plastic. The bill was unfolded and found to contain a white, powdery substance suspected of being a controlled substance. Subsequent chemical analysis established that the white substance was cocaine. The dollar bill and its contents were confiscated.

After the contraband had been found on Garza, a Trooper went to the jail's parking lot and looked inside Garza's vehicle from the outside. The Trooper observed, inside the car, a dollar bill folded in a manner similar to the one just confiscated from Garza.

The Trooper went immediately to a magistrate to secure a search warrant. In the affidavit for the warrant, the Trooper set forth the following facts upon which the magistrate was to rely in deciding whether there was probable cause to issue the warrant:

> On 1-3-83 the affiant stopped a 1976, blue, 4 door, Pontiac on Interstate I-81, at Exit 39 in Roanoke County for a traffic violation. There were two subjects in the vehicle. The driver was a John Louis Garza and the passenger was a David S. Belisle (license plates registered to him). Garza was arrested for not having [an operator's] license and speeding and taken to the Roanoke County Jail. A search of his person at the jail revealed a plastic packet which contained a dollar bill (folded) which contained a white powdery substance believed to be a controlled substance. A visual examination of the interior of the vehicle from the outside reveals a folded bill which resembles the dollar bill with white powdery substance found on Garza.

The Trooper noted in his affidavit that he had personal knowledge of the facts. On the basis of the affidavit, the magistrate issued a warrant to search the car.

The vehicle was moved inside the garage at the jail and searched. In the trunk, the Trooper found three cardboard boxes of green, plant-like material which, upon later analysis, was determined to be 68 pounds of marijuana. In addition, the Trooper re-

covered more of the white powdery substance which turned out to be cocaine. Also found were two .38 caliber revolvers. All of the items found in the car were inventoried. On the day following the search, the search warrant, the underlying affidavit, and the search inventory were filed in the office of the Clerk of the Circuit Court of Roanoke County.

In order to decide whether the affidavit was sufficient to support the search warrant, we must look to the totality of the circumstances. *Illinois* v. *Gates*, 462 U.S. 213, 230 (1983). In *Gates*, the Supreme Court rejected any hypertechnical, rigidly compartmentalized, overly legalistic analyses when reviewing probable cause determinations made by judges and magistrates. The Supreme Court stated that the correct approach is as follows:

> *The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.* And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

462 U.S. at 238-39 (quoting *Jones* v. *United States*, 362 U.S. 257, 271 (1960)) (emphasis added). In addition, citing *Spinelli* v. *United States*, 393 U.S. 410 (1969), the *Gates* Court urged caution where courts are called upon to engage in "after-the-fact scrutiny . . . of the sufficiency of an affidavit." 462 U.S. at 236. In *Gates*, the Court said such after-the-fact reviews should not be *de novo* and that great deference should be given to the magistrate's finding of probable cause.

Here, the facts were recounted by a State Trooper who had first-hand knowledge of the events. He was a highly reliable source. *See Saunders* v. *Commonwealth*, 218 Va. 294, 301, 237 S.E.2d 150, 155 (1977). There was no reason for the magistrate to question the Trooper's veracity. Moreover, the Trooper's affidavit contained factual allegations from which the magistrate could reasonably conclude that there existed a link between the contraband found on Garza's person and the automobile Garza had been driving when arrested. Given all of the foregoing, the magistrate prop-

erly concluded that there existed a probability that the automobile contained contraband.

The existence of such a probability is all that is required to meet the test of probable cause. We have described probable cause as follows:

> Probable cause, as the very name implies, deals with probabilities. *These are not technical; they are the factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act.* Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed.

*Saunders*, 218 Va. at 300, 237 S.E.2d at 155 (emphasis added) (citing *Draper v. United States*, 358 U.S. 307, 313 (1959); *Schaum v. Commonwealth*, 215 Va. 498, 500, 211 S.E.2d 73, 75 (1975)). In *Gates*, the Supreme Court emphasized the fluid nature of the concept: "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S. at 232. Considering the flexible nature of probable cause, giving deference to the magistrate's on-the-spot determination, and analyzing the totality of the circumstances, we conclude that there existed a substantial basis upon which the magistrate justifiably relied in finding probable cause.

Garza's next argument turns on the resolution of a conflict between two statutes. Garza contends that the search warrant affidavit was misfiled. He contends that it should have been filed in the clerk's office of the Circuit Court of the City of Salem and not in the clerk's office of the Circuit Court of Roanoke County. Garza advances this argument even though he was arrested for speeding in Roanoke County and even though the car was searched in the garage at the City of Salem-Roanoke County Jail. In making his argument, Garza relies on Code § 19.2-54 which reads in pertinent part as follows:

> Such affidavit shall be certified by the officer who issues such warrant and delivered by such officer or other officer author-

ized to certify such warrants *to the clerk of the circuit court of the county or city wherein the search is made* within seven days after the issuance of such warrant and shall by such clerk be preserved as a record and shall at all times be subject to inspection by the public. . . .

Failure of the officer issuing such warrant to file the required affidavit shall not invalidate any search made under the warrant unless such failure shall continue for a period of thirty days.

(Emphasis added.) Garza says that the matter is simple: the search was made in the City of Salem and, therefore, the affidavit should have been filed in the clerk's office of the Circuit Court of the City of Salem.

The Commonwealth responds that the normal operation of Code § 19.2-54 is, in this case, modified by the pertinent language of Code § 17-126.2, which reads as follows:

The circuit and district courts of Roanoke County *shall have, concurrently* with the courts of record and courts not of record, respectively, of the City of Salem, *jurisdiction* over criminal offenses committed in or upon the premises, buildings, rooms or offices located in the City of Salem which are owned or occupied by Roanoke County or any officer, agency or department of the county.

(Emphasis added.) According to the Commonwealth, a crime committed at the City of Salem-Roanoke County Jail can be treated, for all intents and purposes, as occurring either in the City of Salem or in Roanoke County, and the choice is up to the government officials.

In response to the Commonwealth's argument, Garza submits that Code § 17-126.2 simply gives the city and the county concurrent jurisdiction over the crimes described in the statute; that the provision should not be read to mean what the Commonwealth suggests it means; and that criminal statutes are to be strictly construed. With regard to this last point, Garza appears to argue that if Code §§ 17-126.2 and 19.2-54 are read together, then Code § 19.2-54 will not be strictly construed.

We think the Commonwealth is correct in asserting that the two code sections must be read together and harmonized. The Commonwealth's argument begins by focusing upon Code § 17-

123. That provision sets forth the jurisdiction of the circuit courts. As the Commonwealth points out, all circuit courts have jurisdiction over all felonies committed in the Commonwealth. Consequently, as the Commonwealth argues, Code § 17-126.2 must mean more than that the Circuit Courts of the City of Salem and of Roanoke County both have jurisdiction over felonies committed on the premises of the jointly owned jail. Otherwise, Code § 17-126.2 would be superfluous because it would add nothing to the general jurisdictional grant set forth in Code § 17-123.

Code § 17-126.2 is a special venue statute that operates to treat a crime which occurs on jail property as if that crime occurred either in the county or the city. This special feature of Code § 17-126.2 becomes apparent when that provision is analyzed together with Code § 19.2-244, which reads in pertinent part as follows:

> Except as otherwise provided by law, the prosecution of a criminal case shall be had in the county or city in which the offense was committed.

The import of the foregoing language is clear: A crime must generally be tried where it occurred. When Code §§ 17-126.2 and 19.2-244 are considered together, it is plain that the General Assembly intended that a crime committed on Roanoke County property located in the City of Salem not only should be treated for all intents and purposes as if it happened in Roanoke County, but also that Roanoke County should have full concurrent criminal jurisdiction over the area in question including search and seizure for criminal law enforcement. The Circuit Court of Roanoke County, by this construction, was "the circuit court of the county . . . wherein the search was made" for the purpose of filing the affidavit within the meaning of Code § 19.2-54. Any other conclusion would make Code § 17-126.2 meaningless.

Finally, we find no merit to Garza's strict construction argument since the true problem in this appeal is one of accommodating conflicting statutes, rather than considering, in isolation, the construction of one statute. Our approach gives breath to both provisions while serving the purpose of Code § 19.2-54. That purpose is to give the defendant reasonable opportunity to determine that the affidavit on file is the same one upon which the determination of probable cause was based. *Quintana* v. *Commonwealth*, 224 Va. 127, 136, 295 S.E.2d 643, 646-647 (1982), *cert. denied*

460 U.S. 1029 (1983). Here, the affidavit was on file in the court where the charges were pending against the defendant. That circumstance could not but help defendant in his effort to assess the accuracy of the affidavit.

For all the foregoing reasons, the judgment appealed from will be affirmed.

*Affirmed.*