## Richmond

CHARLES EDWARD TART

v.

COMMONWEALTH OF VIRGINIA

No. 0456-92-2

Decided November 23, 1993

COUNSEL

Joy Hodges Robinson (Claire G. Cardwell; Claire Cardwell & Associates, on brief), for appellant.

Janet F. Rosser, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**FITZPATRICK, J.**—Charles E. Tart (appellant) was convicted after a bench trial of possession with intent to distribute heroin in violation of Code § 18.2-248. The sole issue raised in this appeal is whether the information provided as the basis for the issuance of the search war-

rant was stale so as to render the warrant facially invalid. Finding no error, we affirm.

On September 6, 1991, at approximately 4:08 a.m., Officer Robert C. Woodburn and several other police officers executed a search warrant on Room 30 of the Town Motel in Henrico County. Appellant and a female companion were in the room. The search revealed a bag of cocaine in "the jalousie glass window in the bathroom over the tub." After appellant was placed under arrest, the police found in a pouch attached to his belt, a pager and several packages of heroin wrapped in tinfoil.

The affidavit accompanying the search warrant states as follows:

On September 6, 1991 your affiant investigator R.C. Woodburn of the Henrico County Division of Police was contacted by Officer Paul Ronca of the Richmond Bureau of Police who related the following facts. Ronca advised your affiant that on this date Ronca spoke with a confidential and reliable informant, here after referred to in this affidavit as CI(1) who is presently cooperating with the Richmond Bureau of Police. Ronca advised that CI(1) stated that within seventy two (72) hours of CI(1) contacting Ronca that CI(1) was in person at Room 4 and Room 30 located at the Town Motel, 5214 Brook Rd. Richmond, Virginia. CI(1) further stated that CI(1) observed what CI(1) knows to be "crack" cocaine in the possession of a black male from the New York area. CI(1) further described the black male as having a scar along his cheek. CI(1) went on to advise Ronca that this CI(1) was also within this seventy two (72) of contacting Ronca that this CI(1) was also in person at Room 30 of the Town Motel located at 5214 Brook and observed a quanity [sic] of what this CI(1) knows to be "crack" cocaine, cut up into small rocks. CI(1) advised that a black male, light skinned [sic] wearing two (2) gold chains and two (2) gold rings was in possession of the "crack" cocaine in Room 30. CI(1) advised that the [sic] above described subjects in Rooms 4 and 30 of the Town Motel were associated in regard to the illegal possession of the cocaine.

CI(1) openly admits to having both abused and sold "crack" cocaine in the past and has moved among the illegal drug cultures in the Richmond metropolitan area and is completely familiar with "crack" cocaine and its appearance.

It is for the above stated facts that your affiant firmly believes that there is now being illegally stored a quanity [sic] of "crack" cocaine in Room 4 and Room 30, located at the Town Motel, 5214 Brook Road, Henrico County, Virginia.

Based upon this information, the magistrate issued a search warrant for Room 30 of the Town Motel for the seizure of "cocaine and any and all items related to, or indicative of the possession, use, transportation or storage . . . thereof." The warrant was issued on September 6, 1991 at 3:35 a.m., and the police executed it approximately thirty minutes later.

Appellant filed a pre-trial motion to suppress the evidence seized pursuant to the search claiming that, because of the potential transient nature of motel room occupants, the allegation that "within 72 hours" drugs were seen in the room was "stale" and so "lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

At the conclusion of the suppression hearing, the trial judge specifically found:

that the affidavit does in fact provide probable cause, and if not, no question in my mind from the totality of it that the police officers were acting in good faith under [*United States v. Leon*, 468 U.S. 897 (1984)], and I do not feel the facts presented in this affidavit would in any way present to a reasonable police officer the situation that he would not reasonably believe that this was in fact a valid search warrant issued on probable cause.

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (citation omitted); *Garza v. Commonwealth*, 228 Va. 559, 563, 323 S.E.2d 127, 129 (1984). The initial determination of probable cause requires the magistrate to weigh the evidence presented in light of the totality of the circumstances. In contrast, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39 (citation omitted); *Garza*, 228 Va. at 563, 323 S.E.2d at 129.

It is well settled "that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates,* 462 U.S. at 236 (citation omitted); *see also United States v. Settegast,* 755 F.2d 1117, 1121 (5th Cir. 1985). "A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Williams v. Commonwealth,* 4 Va. App. 53, 68, 354 S.E.2d 79, 87 (1987) (quoting *Massachusetts v. Upton,* 466 U.S. 727, 733 (1984)).

The underlying affidavit in this case was specific in the description of the individuals involved in each room to be searched; that the individuals were associated in an ongoing criminal enterprise; that the confidential informant had been in the rooms *within* the past seventy-two hour period and had personally seen the drugs in Rooms 4 and 30 of the motel. From this information, a magistrate could reasonably conclude that the two men described in the affidavit were involved in the sale of drugs and that there was a "fair probability" that drugs were being stored in these rooms.

Appellant argues that the character of a motel is transient and, as such, a seventy-two hour time frame is too long a period for a magistrate to have reasonably concluded that drugs would remain in the room. The police did not check whether the same people were still registered in the room to be searched nor did they conduct any additional surveillance of the room. Admittedly, had the police taken these simple steps to ascertain whether or not the occupants of the targeted rooms had changed after the time the confidential informant observed the drugs or had the police proffered reasons why such additional information was not reasonably ascertainable, that information would have significantly bolstered the affidavit. We conclude, however, that the location searched, a motel room, is merely one factor to be considered in light of the totality of the circumstances. The search warrant issued in this case was for the search of drugs *stored* in the motel room, specifically: "cocaine and any and all items related to, or indicative of the possession, use, transportation or storage of thereof including but not limited to, pipes, vials, baggies and packaging." As such, we find that the affidavit provided sufficient information to justify the magistrate's determination of probable cause.

The affidavit indicates "that *within* seventy two (72) hours" of [the confidential informant's] contacting [the police] that [the confi-

dential informant] was in person at Room 4 and Room 30 located at the Town Motel, 5214 Brook Rd. Richmond, Virginia." (emphasis added). The trial judge succinctly pointed out the import of the phrase "within seventy two (72) hours," as follows:

within the past 72 hours, not 72 hours, but within the last 72 hours. So, I mean, that, as you said, could be anytime as the magistrate had presented to him that this information could have been immediately prior to the affiant being there in front of him, all the way back to 72 hours.

The Commonwealth's Attorney informed the trial judge that this phrase was often used to protect the identity of confidential informants. Further, the affidavit indicates that two rooms contained illegal drugs, that the occupants of the rooms were associated with one another and that "a quanity [sic] of . . . 'crack' cocaine, [was] cut up into small rocks." From this information, it is reasonable to infer that the occupants were engaged in an ongoing criminal enterprise of drug distribution. We have held that "[t]he selling of drugs, by its nature, is an ongoing activity." *Turner v. Commonwealth,* 14 Va. App. 737, 746, 420 S.E.2d 235, 240 (1992) (citing *Donaldson v. State,* 46 Md. App. 521, 420 A.2d 281 (1980)). In addition, there was almost no delay between the issuance of the warrant and its execution. "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca,* 380 U.S. 102, 109 (1965) (citation omitted). Accordingly, based on the facts of this case, we find that the information was not rendered stale by the time frame presented and, as such, that a substantial basis existed for the magistrate's determination of probable cause.

Assuming, *arguendo,* that "the warrant was not issued upon probable cause, evidence seized pursuant to the warrant is nevertheless admissible if the officer executing the warrant reasonably believed that the warrant was valid." *Lanier v. Commonwealth,* 10 Va. App. 541, 547, 394 S.E.2d 495, 499 (1990) (citing *Leon,* 468 U.S. at 918-21) (other citations omitted). In this case, there is no evidence that the police acted other than in good faith. The trial judge specifically found that:

no question in my mind from the totality of it that the police officers were acting in good faith under *Leon,* and I do not feel the

facts presented in this affidavit would in any way present to a reasonable police officer the situation that he would not reasonably believe that this was in fact a valid search warrant issued on probable cause.

This finding is amply supported by the evidence.

■ "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon,* 468 U.S. at 916. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921. The evidence shows that the officers' conduct was "objectively reasonable"; accordingly, the purposes of the exclusionary rule would not be served by excluding this evidence.

We conclude that the search warrant was not "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 923 (citation omitted). As in *Leon,* the warrant here was not a "bare bones" affidavit. *See id.* at 926. An objectively reasonable belief that probable cause existed was provided by Officer Woodburn's sworn statement that a reliable and confidential informant visited the motel room within the past seventy-two hours and observed a quantity of "crack" cocaine "cut up into small rocks"; that the confidential informant had contact with the occupants of Room 4 and Room 30 of the motel; and that these occupants "were associated in regard to the illegal possession of the cocaine." As in *Leon,* the affidavit "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *Id.* Therefore, we cannot say that the officers could not have "harbored an objectively reasonable belief in the existence of probable cause." *Corey v. Commonwealth,* 8 Va. App. 281, 289, 381 S.E.2d 19, 23 (1989) (quoting *Leon,* 468 U.S. at 923); *see also Miles v. Commonwealth,* 13 Va. App. 64, 71, 408 S.E.2d 602, 606 (1991), *aff'd en banc,* 14 Va. App. 82, 414 S.E.2d 619 (1992).

The dissent raises three issues that must be addressed: (1) the appropriate standard of appellate review; (2) the application of Rule 5A:18; and (3) the established Virginia precedent applying the *Leon* "good faith" exception.

■ It is well established that on appeal the burden is on the appellant to show, considering the evidence in the light most favorable to the Commonwealth, that the denial of a motion to suppress constitutes

reversible error. *Fore v. Commonwealth,* 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied,* 449 U.S. 1017 (1980). In this case, the dissent construes the facts in the light *least* favorable to the Commonwealth. The dissent, for example, asserts that the warrant was issued "three days after an informant reported being in the room," when, in fact, the record shows that the time frame at issue was "*within* 72 hours." In addition, the dissent states that "the facts alleged in the affidavit are consistent with the informant observing two people who used three pieces of 'crack' cocaine in the motel room on the day the room was being vacated." Although we view such an interpretation of the facts as strained, this dissent ignores all other reasonable inferences of ongoing criminal activity that could be drawn from these same facts. Further, the dissent inaccurately asserts that "[t]he Commonwealth also does not suggest that Tart was one of the men seen in the room three days earlier or that he resembled the description of either of the two men." Appellant's counsel stated to the trial court that "there's a mention of someone who admittedly fits my client's description as having been in that room within the last three days."

The dissent also disagrees with our reliance on *Leon* and argues, *sua sponte,* that "the Virginia suppression statute does not contain a 'good faith' exception." As the dissent acknowledges, at no point in these proceedings, at trial, on brief to this Court, or in oral argument, was a violation of Code § 19.2-60 ever raised.[1] Accordingly, our consideration of this argument is barred by Rule 5A:18. The dissent, however, would have us invoke the ends of justice exception to the rule "to prevent the denial of an essential right."

█ "The 'ends of justice' provision is a narrow one that allows consideration when the record affirmatively shows [clear error or] that a miscarriage of justice has occurred." *Reed v. Commonwealth,* 6 Va. App. 65, 70, 366 S.E.2d 274, 277 (1988). We find nothing in the record that satisfies this requirement. The record amply supports appellant's conviction for possession with intent to distribute heroin in violation of Code § 18.2-248.

---

[1] At trial, appellant's motion to suppress was based on two separate grounds. First, that the police failed to comply with the "knock and announce" doctrine prior to forcibly entering the room occupied by appellant. Second, appellant argued that the information in the affidavit was so stale that "even well-trained officers could not in good faith rely upon [the search warrant] as being validly issued." Appellant did not argue that *Leon* did not apply in Virginia, but rather, that *Leon* was not available to these officers because "the affidavit on its face is so deficient in probable cause as to not even allow an officer the good faith exception."

■ In addition, the dissent argues that Virginia does not recognize a "good faith" exception to the probable cause requirement and, therefore, the *Leon* exception does not apply. We disagree. Both the Supreme Court of Virginia and this Court have embraced and applied the *Leon* "good faith" exception in circumstances similar to the case at bar. *See McCary v. Commonwealth,* 228 Va. 219, 321 S.E.2d 637 (1984) (discussing the requirements of Code § 19.2-54 and holding that "the search was valid for another reason. We embrace the recently announced 'good faith' exception to the exclusionary rule") (citing *Leon,* 468 U.S. 897; *Massachusetts v. Sheppard,* 468 U.S. 981 (1984)); *see also Derr v. Commonwealth,* 242 Va. 413, 410 S.E.2d 662 (1991); *West v. Commonwealth,* 16 Va. App. 679, 693 n.5, 432 S.E.2d 730, 739 n.5 (1993); *Miles v. Commonwealth,* 13 Va. App. 64, 408 S.E.2d 602 (1991), *aff'd en banc,* 14 Va. App. 82, 414 S.E.2d 619 (1992); *Atkins v. Commonwealth,* 9 Va. App. 462, 389 S.E.2d 179 (1990); *Corey v. Commonwealth,* 8 Va. App. 281, 381 S.E.2d 19 (1989). "[W]e are bound by decisions of the Supreme Court of Virginia and are without authority to overrule [them]." *Roane v. Roane,* 12 Va. App. 989, 993, 407 S.E.2d 698, 700 (1991). In addition, "[u]nder the rule of *stare decisis,* a decision by a panel of this court is an established precedent." *Robinson v. Commonwealth,* 13 Va. App. 540, 543, 413 S.E.2d 661, 662 (1992) (citations omitted). Accordingly, we conclude that the *Leon* "good faith" exception is an accepted component of Virginia law.

For the reasons set forth above, we find no error in the trial court's refusal to suppress the evidence. Accordingly, we affirm.

*Affirmed.*

Moon, C.J., concurred.

Benton, J., dissenting.

I.

Facts set forth in an affidavit given to support the issuance of a search warrant must establish a nexus between the place to be searched and the criminal activity in question. *United States v. Hove,* 848 F.2d 137, 140 (9th Cir. 1988). The mere assertion that a person was present at a place on one occasion while possessing narcotics three days earlier does not establish the nexus for a search of that place. "The fourth amendment bars search warrants issued on less than probable cause, and there is no question that time is a crucial ele-

ment of probable cause." *United States v. McCall,* 740 F.2d 1331, 1335 (4th Cir. 1984). The magistrate who issued the search warrant in this case could not have made "a practical, common-sense decision . . . , given all the circumstances set forth in the affidavit before him, . . . [that] there [was] a fair probability that contraband or evidence of a crime [would] be found" in the motel room three days after the informant was in the room. *Illinois v. Gates,* 462 U.S. 213, 238 (1983). Thus, I dissent.

## II.

When we view the evidence in the light most favorable to the party who prevailed in the trial court, we are not at liberty to ignore uncontradicted evidence. *Hankerson v. Moody,* 229 Va. 270, 274, 329 S.E.2d 791, 794 (1985). We cannot do so because the trier of fact that first considered the evidence "may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record." *Cheatham v. Gregory,* 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984). Moreover, where no conflict in the evidence exists, we cannot engage in an analysis that assumes as its premise that a conflict does exist in the evidence.

No conflict existed in the evidence before the trial judge concerning the information that was presented to the issuing magistrate. In particular, all the parties agree, and the record is conclusive, that the affidavit provided a period of time in which the event was said to have occurred. The magistrate knew only that at some point within seventy-two hours prior to the informant's report to the police the informant allegedly saw cocaine in the possession of a person in the motel room.

When the allegation is that an event occurred at one point in a period of time, the issue of probable cause becomes time sensitive from the first point in time that the event could have occurred. "[A] prime element in the concept of probable cause is the time of the occurrence of the facts relied upon." *Fowler v. State,* 121 Ga. App. 22, 23, 172 S.E.2d 447, 448 (1970). "[I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States,* 287 U.S. 206, 210 (1932). Therefore, for purposes of our analysis on appeal we must use three days (seventy-two hours) as the standard for determining whether the magistrate could have found probable cause or should have concluded that the application was so stale as to lack probable cause.

The trial judge in reviewing the facts presented to the magistrate was not at liberty to review the search warrant application and conclude that the events recounted in the affidavit occurred at a time prior to the presentation of the warrant application that is most favorable to the Commonwealth. It was not within the discretion of the trial judge, anymore than it was within the discretion of the magistrate, to conclude that the affidavit in support of the warrant described events that happened at any time less than seventy-two hours prior to the preparation of the affidavit. Although such a finding might have assisted the Commonwealth in making its case for probable cause, the magistrate is required to make a probable cause decision in a neutral detached manner. *See Lo-Ji Sales v. New York,* 442 U.S. 319, 326 (1979). Moreover, a conclusion by either the trial judge or magistrate that the events happened less than seventy-two hours prior to their being reported would not be a reasonable inference drawn from the affidavit; rather, it would be rank speculation.

This is not an instance where one witness testified in the trial court that an event occurred seventy-two hours earlier and another witness testified that the same event occurred one hour earlier, requiring the trial judge to resolve the dispute between the two. In judging the magistrate's determination, the trial judge could only have concluded that the magistrate was bound by the information attributed to the informant. The trial judge was further bound to find that the magistrate had no basis upon which the magistrate could have concluded that the events the informant observed occurred less than three days prior to the report. No evidence, or even an allegation, existed that would substantiate that conclusion. Thus, in determining whether probable cause existed, the magistrate had to consider the effect of the event occurring at the outside parameter of the reported time period — seventy-two hours (three days) prior to the warrant application — because on the facts before the magistrate that is when the event might have occurred. No facts in the affidavit made it more or less probable that the event did not occur three days before the preparation of the affidavit.

Thus, before issuing the warrant the magistrate had to determine whether probable cause existed based upon the informant's report of having seen a person possessing cocaine three days earlier. Any assumption by the magistrate or the trial judge that the event in fact occurred less than three days prior to the preparation of the affidavit would have been speculative and made in disregard of the facts. When we view the evidence in the light most favorable to the party who pre-

vailed at the trial court, we cannot attribute to the fact finder an ability to create evidence or engage in conjecture.

## III.

The affidavit stated only that two men were observed on one occasion in a motel room in possession of cocaine. That the event occurred in a motel room, a place generally used by transients, is significant. The affidavit does not allege, even by implication, that the two persons who possessed the cocaine were the occupants of the room, had any continuing connection to the room, or were expected to reenter the room. None of the circumstances alleged in the affidavit suggested a probable conclusion that the persons described in the affidavit as possessing cocaine still occupied the motel room or were expected to return to the room. No reasonably well-trained police officer could have had an objectively reasonable belief that, absent other facts, probable cause existed to search the room seventy-two hours later. The effect of today's decisions is to expose every hotel or motel guest to the very real prospect that their room will be searched because, during the preceding seventy-two hour period, another guest who occupied the room may have been observed in possession of a controlled substance.

The Commonwealth does not suggest that Tart or the woman in the room when the warrant was executed had any connection to the events that were alleged to have occurred seventy-two hours earlier. The Commonwealth also does not suggest that Tart was one of the men seen in the room three days earlier or that he resembled the description of either of the two men. The police officer who signed the affidavit did not allege that the room was still occupied by the same persons who were seen by the informant. Rather, the officer merely alleged in a wholly conclusional fashion that he "believes that there is now being illegally stored a quantity of 'crack' cocaine in [the] room." In my judgment, no reasonably well-trained officer could have believed that the informant's observation, which only alleged presence in the room of a man possessing cocaine, was a sufficient basis to provide a nexus between the same man and the room seventy-two hours later.

Likewise, no facts in the affidavit reasonably support the magistrate's conclusion that the person occupying the room seventy-two hours earlier was still occupying the room. Certainly, this Court has no basis to defer to the magistrate's conclusion that seventy-two hours

after cocaine was seen in the possession of a person in a motel room "a 'substantial basis'" existed for concluding that the same person still occupied the motel room. *Gates,* 462 U.S. at 238-39 (quoting *Jones v. United States,* 362 U.S. 257, 271 (1960)). The majority opinion concedes that the police did not even conduct a basic, rudimentary investigation to determine whether the same persons were registered in the room three days after the informant had been in the room. Indeed, the police did nothing except obtain a warrant to search a motel room three days after an informant reported being in the room. The majority opinion ignores these decisive circumstances because the affidavit alleged that cocaine was *"stored"* in the room.

The officer also alleged, in a wholly conclusional fashion, that cocaine was "stored" in the room. No facts alleged in the affidavit support that conclusion. The facts attributed to the informant did not include an allegation that a large quantity of narcotics had been seen in the room, that narcotics had been sold in the room, or that narcotics were "stored" in the room. Moreover, the affidavit did not contain an allegation that the room was rented for a long term or gave the appearance of being used as a storage place. Consequently, the informant's observations provided no basis for a belief that narcotics were "stored" in the room. The informant merely reported seeing two people in possession of cocaine. The informant gave no facts that would lead any reasonable person to conclude that drugs were *"stored"* in the room.

Without any basis in the facts, the majority states that the affidavit asserts the existence of an "ongoing criminal enterprise." Nothing in the affidavit provides a basis for that inference. No facts alleged on the affidavit provide a basis for a reasonable conclusion "that there was a 'fair probability' that drugs were being stored in these rooms," that the persons occupying the rooms at any time "were involved in the sale of drugs," or that there existed "an ongoing criminal enterprise." These conclusions are unsupported by the affidavit and merely represent baseless speculations. Moreover, the facts alleged in the affidavit are consistent with the informant observing two people who used three pieces of "crack" cocaine in the motel room on the day the room was being vacated. Simply put, the affidavit lacked any semblance of probable cause to believe that criminal activity was occurring in that room three days later.

## IV.

Relying upon *United States v. Leon,* 468 U.S. 897 (1984), the majority opinion finds that, in any event, the evidence seized need not be suppressed. Although I disagree that *Leon,* if applied to the facts of this case, supports an affirmance, I believe that we need not reach that issue because the Virginia suppression statute does not contain a "good faith" exception.[2]

"[A] State is free as a matter of its own law to impose greater restrictions on police activity than those [the United States Supreme] Court holds to be necessary upon federal constitutional standards." *Oregon v. Hass,* 420 U.S. 714, 719 (1975). Thus, the requirements for the issuance of a search warrant may be determined by the legislature as a matter of state law and may "impose higher standards on searches and seizures than required" under federal law. *Cooper v. California,* 386 U.S. 58, 62 (1967).

In Virginia, the issuance of search warrants is governed by statutes. *See* Code §§ 19.2-52 to -60. Nothing in our statutory law allows a search to be made pursuant to a warrant, absent probable cause. *See* Code §§ 19.2-52 to -54. If a search and seizure are made pursuant to a warrant and in the absence of probable cause, the legislature has provided a statutory right to suppress the seized evidence. *See* Code § 19.2-60. Thus, Virginia law provides an adequate and independent ground for excluding the fruits of this search. *See Michigan v. Long,* 463 U.S. 1032, 1040 (1983). In addition, federal case law does not control the interpretation or application of the Virginia suppression statute.

The Virginia warrant statute does not codify "good faith" as an exception to the probable cause requirement. In the absence of a legislative expression that "good faith" is an exception to the statutory command, decisions by the courts in Virginia that infuse the *Leon* good-faith exception into the statute constitute judicial legislation. *See*

---

[2] The majority opinion correctly notes that Tart's trial counsel did not specifically assert the absence of a "good faith" exception in the Virginia statute as the basis for suppressing the evidence. The written motion to suppress cited Article I, Section 10 of the Constitution of Virginia, the foundational provision for the warrant statute. In addition, Tart's counsel orally argued that the affidavit failed to establish probable cause and, for that reason, should have been suppressed. Although the argument failed to assert that the statute does not embrace good faith, I believe that the ends of justice should be invoked to consider that specific issue to prevent the denial of an essential right. *Cooper v. Commonwealth,* 205 Va. 883, 888-90, 140 S.E.2d 688, 692-93 (1965).

*Gary v. State,* 422 S.E.2d 426, 429 (Ga. 1992). Absent probable cause, the search warrant should not have been issued and the search should not have been conducted. Searches that are conducted in the absence of probable cause are precisely the type of "unlawful search or seizure" that is contemplated by our statute. *See* Code § 19.2-60. *See also State v. Guzman,* 842 P.2d 660 (Idaho 1992) (finding no "good faith" exception in the Idaho Constitution and statutes); *Commonwealth v. Upton,* 476 N.E.2d 548 (Mass. 1985) (finding no "good faith" exception in the Massachusetts suppression statute); *State v. Carter,* 370 S.E.2d 553 (N.C. 1988) (finding no "good faith" exception in the North Carolina suppression statute). Thus, because Code § 19.2-60 contains no "good faith" exception, I would hold that the trial judge erred in failing to suppress the fruits of the search.

## V.

The majority opinion's application of *Leon* not only ignores the plain reading of the Virginia statute, but also is analytically unsound. Nothing is objectively reasonable about concluding that three days after a person was seen in a motel room possessing cocaine, the same person or the cocaine will still be in the room. Absent other facts and circumstances, the conclusion is purely speculative. *Leon* does not excuse all inadequacies and certainly does not apply if "a reasonably well-trained [police] officer . . . would have known that his affidavit failed to establish probable cause." *Malley v. Briggs,* 475 U.S. 335, 345 (1986).

In *Leon,* the police conducted a substantial investigation and supplemented the informant's facts with the facts of their investigation. 468 U.S. at 902. Objective "good faith" presupposes that officers will conduct reasonable inquiry into an informant's reports and presupposes at least minimal standards of police conduct. *Id.* at 922 n.23, 923 n.24. *Leon* itself states that exclusion is mandated when a warrant application is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923.

[Where] a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. But it is different if no officer of reasonable competence would have requested the warrant, *i.e.,* his request is outside the range of the professional competence expected of an officer. If the magistrate issues the warrant in such a case, his action is not just a reason-

able mistake, but an unacceptable error indicating gross incompetence or neglect of duty. The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate.

*Briggs,* 475 U.S. at 346 n.9. The indicia of probable cause must be considered with respect to the officer's stated belief that narcotics were "stored" in the room. No facts were alleged in the affidavit to support that belief.

The affidavit contained no allegation of fact from the informant or the officer that would support an inference that the two men or the narcotics would ever again be found in the motel room. The facts alleged merely supported an inference that the two men had a casual connection to the room. Simply put, none of the facts stated in the affidavit support the affiant's conclusion that drugs were "stored" in the room. Thus, the magistrate could not have reasonably concluded that probable cause existed to believe that drugs were "stored" in the room. The protections embodied in the Fourth Amendment require that "inferences [from facts in a search warrant affidavit] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 14 (1948) (footnote omitted). Moreover, the majority opinion provides no logical basis to support its speculative inference that the facts attributed to the informant provide probable cause to believe drugs were "stored" in the room.

## VI.

By authorizing the issuance of a search warrant based upon the circumstances as alleged by the affiant in this case, the majority sanctions searches of motel and hotel rooms and their occupants several days after a narcotics user has been in the motel room and without any suggestion that the current occupants of the room were the persons who occupied the room when the narcotics were present. The majority opinion sanctions such a search without requiring any facts that would provide a nexus between the person then occupying the room and the earlier sighting of narcotics. The Court has eliminated the necessity and, thus, the incentive for police to perform basic, rudimentary investigation to ascertain whether circumstances of a transient nature have a fair probability of continuing to be viable. The statutory and constitutional requirements of probable cause have been brushed aside in the haste to appear diligent in the search for narcotics.

It makes all the difference in the world whether one recognizes the central fact about the Fourth Amendment, namely, that it was a safeguard against recurrence of abuses so deeply felt by the Colonies as to be one of the potent causes of the Revolution, or one thinks of it as merely a requirement for a piece of paper.

*United States v. Rabinowitz,* 339 U.S. 56, 69 (1950) (Frankfurter, J., dissenting). Today's decision further erodes the guarantees of the constitutions of Virginia and the United States.

I dissent.