Richmond

# DEANGELO RAPHAEL ROBINSON

v.

# COMMONWEALTH OF VIRGINIA

No. 1489-93-2

Decided February 14, 1995

Counsel

Robert P. Geary, for appellant.

Marla Lynn Graff, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

Opinion

**FITZPATRICK, J.**—DeAngelo R. Robinson (appellant) was convicted of possession of cocaine with intent to distribute in violation of Code § 18.2-248. He argues that the trial court erred when it denied his motion to suppress the evidence because the search and seizure of the cocaine fell within the "good faith" exception to the warrant requirement. We disagree and affirm the trial court.

## BACKGROUND

In January 1993, Henrico County Police Officer Stephen C. Lowery (Lowery) received information from a confidential informant regarding possible drug activity in the area of the Huntington Village Apartments in Richmond. Lowery submitted the following affidavit to the magistrate:

1-9-93 Your affiant officer S.C. Lowery of the Henrico County Division of Police met with a confidential and reliable informant who is presently cooperating with the police in regard to illegal activity in the Richmond metropolitan area. This informant advised your affiant that within 24 hours of this meeting this informant observed a[n] individual at the Econo Lodge located at 5221 Brook Rd. in the central portion of Henrico County, going by the name of DeAngelo Robinson. This informant further stated that the Robinson subject was staying at the Econo Lodge and was observed by this informant to be in possession of a large amount of U.S. currency. Your affiant being familiar with a subject known to

your affiant as DeAngelo R. Robinson as being a[n] illegal drug violator in the Richmond area checked with the Econo Lodge records to determine if the Robinson subject was in fact the same. Your affiant is familiar with the Robinson subject through past contact regarding illegal drug activity in the central portion of Henrico County. Your affiant has in the past charged DeAngelo R. Robinson with the possession of cocaine and in checking Robinson[']s criminal history has found that Robinson has been convicted of the possession of cocaine, two counts, [and] the possession of marijuana. Robinson has also in the past been charged with the possession of a concealed weapon and the possession of a weapon while in possession of cocaine. Your affiant has also taken action o[n] Robinson in the past in regard to a Metro Richmond crime stopper that related that Robinson was delivering drugs to the Huntington Village Apartments that are located in a very close proximity to the Econo Lodge at 5221 Brook Rd. This crime stopper also stated that Robinson was selling cocaine and marijuana and is armed with a .380 cal. pistol . . . .

Your affiant in checking with the Econo Lodge records found that the DeAngelo Robinson staying at the Econo Lodge was in fact the same DeAngelo Robinson your affiant was familiar with. This was done by comparing the social security number the Robinson subject recorded at the time he, Robinson leased the room. Your affiant further found in checking the hotel records that Robinson checked [into] th[e] Econo Lodge on 1-8-93 and paid[ ] cash for this transaction. Your affiant found that on this date 1-9-93 the Robi[n]son subject left Room 268 and leased a new room on the same floor located at the end of the hallway. This transaction was also all cash. The new room leased by Robinson is Room 262. Your affiant found that upon check[-]in Robinson displayed no luggage, and requested no maid service during his, Robinson[']s stay. The Econo Lodge records also show a very high volume of in[-]coming calls and phone use.

Your affiant had Officer S.D. Jeffrey estab[l]ish a surveillance of Room 262 at the Econo Lodge at approximately 1730 hrs. on this date. At 1750 hrs. Jeffrey reported that he observed a subject fitting the physical description of

Robinson, leave Room 262 and walk across Rt. 1 and use a pay phone, during inclement weather. Jeffrey also reported that a subject was observed looking out of the room window on a frequent basis.

Your affiant at approximately 1300 hrs. on this date, 1-9-93 contacted Investigator J.J. Riani of the Henrico County Division of Police Enforcement Unit and related the above[-]listed facts to Riani. Riani having worked in the field of hotel-motel interdiction advised your affiant that the above[-]listed facts are consist[e]nt with illegal drug violators utilizing hotel-motel rooms during illegal drug activity. Riani advised that persons involved in this activity do pay cash from day to day, lease rooms in a close proximity to the area of their distribution, deny any maid service, lease rooms at the end of hallways, and do frequently change rooms in the same hotel-motel. This activity is consist[e]nt with subject[s] who are processing and distributing illicit drugs. All the above actions are to aid in the attempt to minimize the detection of these ind[i]viduals from law enforcement efforts. Riani further advised the frequent phone use and the trip during inclement weather to a pay phone is extrem[e]ly indicative of illegal drug activity in hotel-motel rooms.

In the affidavit, Lowery indicated the facts establishing the reliability of his sources:

The reliability of the confidential and reliable informant is as follows. This informant has worked with your affiant for approximately [eight] months, and during this time has related information to your affiant that has resulted in the arrests and convi[c]tions of . . . individuals for illegal activity in Henrico County. This informant has also related information in regard to other criminal activity that your affiant has found to be true and accurate.

Your affiant has been a police officer for eight years and during this time has received information from informants, and utilized this information to further criminal investigations.

Investigator J.J. Riani has been a police officer for [fifteen] years and during this time has worked as a narcotic investi-

gator for a period of [nine] years. During this time Riani has received training in the field of hotel-motel interdiction and has been personally involved in numerous drug[-]related investigations involving hotel and motel rooms. Riani has also acted as a member of several area interdiction teams and acted as a trainer for these teams.

A magistrate issued a search warrant for appellant's motel room, authorizing a search for "cocaine, monies, records, weapons, packaging, adulterants and any and all items used and derived from the processing, packaging and distribution of cocaine." When executing the warrant, Lowery searched appellant and confiscated $200 from his pants pocket and marijuana and cocaine from his coat pocket.

In a pretrial motion to suppress, appellant argued that the search warrant was defective because Lowery failed to set forth sufficient facts in his affidavit to establish probable cause for the issuance of the warrant. The trial court overruled appellant's motion, finding that, although the affidavit failed to provide the magistrate with a substantial basis for a finding of probable cause, the good faith exception established by *United States v. Leon*, 468 U.S. 897 (1984), applied.

## GOOD FAITH EXCEPTION TO SEARCH WARRANT REQUIREMENT

Appellant argues that the affidavit underlying the warrant was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Leon*, 468 U.S. at 923. We need not address the correctness of the trial court's initial determination that the warrant was insufficient because we agree with the trial court's finding that the evidence was admissible under the good faith exception to the exclusionary rule. *See Atkins v. Commonwealth*, 9 Va. App. 462, 464, 389 S.E.2d 179, 180 (1990).

■ "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Tart v. Commonwealth*, 17 Va. App. 384, 390, 437 S.E.2d 219, 222

(1993) (citation omitted). The deterrent effect of the exclusionary rule "is absent where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the warrant." *Derr v. Commonwealth*, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991).

The exception is not available in the following four instances:

(1) [W]here the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

*Miles v. Commonwealth*, 13 Va. App. 64, 71, 408 S.E.2d 602, 606 (1991), *aff'd en banc*, 14 Va. App. 82, 414 S.E.2d 619 (1992). Although appellant argues that the second, third, and fourth requirements mandate exclusion of the cocaine, we conclude that none apply.

As in *Leon*, the affidavit is far from a "bare bones" allegation of wrongdoing. *See Leon*, 468 U.S. at 926. Lowery was specific about his personal knowledge of appellant's past involvement in the use and sale of drugs. In the affidavit, he stated his knowledge of appellant's past convictions for cocaine possession and appellant's drug activities near the Huntington Village Apartments. Also, Lowery offered his own observations of appellant's behavior at the Econo Lodge, including the assertions that appellant paid cash for his motel rooms, that he switched his initial motel room for one at the end of a hallway, that he carried no luggage, that he declined maid service, and that he received numerous phone calls during his stay. Lowery consulted an expert in hotel-motel drug distribution and verified that appellant's behavior was consistent with using a motel room for drug sales. Appellant's argument that Lowery must wait for a drug transaction to occur before submitting the request for a warrant is without merit.

Lastly, we cannot say that Lowery had no objectively reasonable belief in the validity of the warrant issued by the magistrate.

The numerous and detailed facts in the affidavit when viewed as a whole suggested that appellant was selling drugs from his motel room. No evidence established that the police failed to act in good faith in relying on the magistrate's issuance of the warrant. Accordingly, the decision of the trial court is affirmed.

*Affirmed.*

Baker, J., concurred.

Benton, J., dissenting.

## I.

Finding the search warrant insufficient to establish probable cause, the trial judge ruled without specifying his reasoning "that the good faith exception would apply in this situation." Because "[t]he Virginia warrant statute does not codify 'good faith' as an exception to the probable cause requirement," *Tart v. Commonwealth*, 17 Va. App. 384, 397, 437 S.E.2d 219, 227 (1993) (Benton, J., dissenting), I would reverse the trial judge's refusal to suppress the fruits of the search warrant. "Searches that are conducted in the absence of probable cause are precisely the type of 'unlawful search or seizure' that is contemplated by our statute." *Id.* at 398, 437 S.E.2d at 227 (quoting Code § 19.2-60).

## II.

Even if the strictures of state law are ignored, I believe that federal law requires that we reverse the trial judge's refusal to suppress the evidence. The federally enacted good faith exception to the suppression rule does not apply (i) when "a warrant . . . [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid" or (ii) when a warrant application is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *United States v. Leon*, 468 U.S. 897, 923 (1984) (citation omitted).

## III.

When we examine, as we must, "the affidavit, looking to see what it did, and did not, establish regarding [appellant's] activities," *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988), the conclusion inexorably follows that no reasonable police officer could have believed that the warrant application was valid or that

it established probable cause. The informant merely reported that he observed appellant at a motel and "in possession of a large amount of U.S. currency." The informant's assertions that appellant was at a motel and was seen with a large amount of currency "carry no inherent indicia of illegality," *Guzewicz v. Commonwealth*, 212 Va. 730, 733, 187 S.E.2d 144, 147 (1972). The affidavit did not allege as a fact that the informant, the affiant, or anyone else observed appellant possessing narcotics or in the presence of narcotics at the motel. Indeed, the affidavit did not even allege as a fact that appellant was observed engaging in criminal conduct. Despite the absence of those significant facts, the affiant stated as a conclusion his belief "that there is now being stored a quantity of illegal drugs." No facts alleged in the affidavit support that conclusion.

"Without a specific allegation of criminal activity to color the noncriminal behavior described in the affidavit, there is no information from which to conclude that evidence of criminal activity would be found at the time of the search." *State v. Diamond*, 628 A.2d 1032, 1034 (Me. 1993). As the Supreme Court observed:

> [I]t is possible that a magistrate, working under docket pressure, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.

*Malley v. Briggs*, 475 U.S. 335, 345-46 (1986) (footnote omitted).

In the absence of a specific factual allegation of criminal activity, the affidavit cannot be said to be the product of a police officer "exercising reasonable professional judgment." *Id.* Furthermore, there are established "limits beyond which a magistrate may not venture in issuing a warrant." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). An affidavit based upon descriptions of activities that objectively do not demonstrate criminal behavior is so facially deficient that it cannot support the issuance of a search warrant. *See Diamond*, 628 A.2d at 1034. *See also State v. Probst*, 795 P.2d 393 (Kan. 1990).

## IV.

In the absence of any allegation of observed criminal conduct, the affiant attempted to put flesh on the "bare bones" affidavit by describing a vast quantity of "unusual" facts upon which another officer concluded that the conduct was consistent with criminal activity. From that conclusion, the affiant then drew another conclusion that he articulated as a belief that drugs were stored in the room. This process by which police officers draw conclusions from non-criminal conduct, and in the absence of factual allegations of criminal conduct, has never been sufficient to provide an indicia of probable cause. "The essential protection of the warrant requirement of the Fourth Amendment, as stated in *Johnson v. United States*, 333 U.S. 10 [,13-14] (1948), is in 'requiring that [the usual inferences which reasonable men draw from evidence] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Gates*, 462 U.S. at 240.

Furthermore, to support the police officer's conclusions, which were merely suppositions, the affiant provided a series of inane minutia and innuendo. The affiant first inserted in the affidavit information to bolster the reliability of his informant. The veracity of the informant is irrelevant, however, because the informant alleged no criminal activity. Moreover, the informant's conclusory report that the appellant had a large amount of money is meaningless because it lacks specificity as to the amount and fails to connect it to a factual allegation of criminal conduct.

That appellant paid cash for a two day stay in a low budget motel signifies nothing regarding criminal activity. Furthermore, even if appellant was required to request maid service and, as the affidavit reported, did not do so, that circumstance is not shown to be of any significance because appellant was in the room less than a full day. No facts in the affidavit shed any light on the reason for the room change.

That appellant used a public telephone rather than the telephone in his room is also meaningless. Indeed, many motel users opt to spend twenty-five cents to use a public telephone rather than pay the motel an exorbitant surcharge for the convenience of using the room telephone. Furthermore, the averment of "a very high volume of incoming calls and phone use" has little signifi-

cance because of the lack of specificity of the volume or content of the telephone calls.

The affidavit contained no allegations of frequent or an unusual number of visitors. Indeed, the affidavit contains no allegation of any visitors or any personal contact between appellant and another person. The affiant's report that "upon check-in [appellant] displayed no luggage" does not equate to an averment that appellant had no luggage. Other factual minutia such as "looking out the room window on a frequent basis" raises the spectre of furtiveness but does not alone or in combination with other facts give rise to probable cause to believe appellant was committing a crime.

These factual recitations of appellant's activities amount only to suspicion of his purpose. It bears repeating that no fact asserted in the affidavit directly or indirectly leads to the conclusion that appellant was in possession of drugs at the motel. The length of the affidavit does not rectify the meagerness of its substance. "Quality of information, not quantity, is what establishes probable cause." *State v. Huft*, 720 P.2d 838, 841 (1986). Because the affidavit contained no factual statement that appellant was engaged in criminal activity, the warrant is "facially deficient," and the facts in the search warrant affidavit lack any connection to "indicia of probable cause." *Leon*, 468 U.S. at 923. An affidavit of this type is described as "bare bones" because it does not support a claim of "objective good faith." *Craig*, 861 F.2d at 821. A police officer can have no reasonable grounds for believing that a warrant was properly issued when it is based, as it was in this case, on "a 'bare bones' affidavit." *Leon*, 468 U.S. at 923 n.24.

Furthermore, the four corners of the affidavit manifest the affiant's lack of belief that criminal conduct was occurring. The affidavit states that the affiant relayed to Investigator Riani the facts reported by the informant and the activities observed by another police officer. The affiant sought to rely upon the conclusions drawn by Investigator Riani to remedy the failure to allege as a fact the occurrence of a crime. The affiant then presented to the magistrate his bare conclusion based upon the conclusions drawn by Investigator Riani. The conclusions of Investigator Riani are deficient precisely because they are only his conclusions and contain no substantial factual allegation for their foundation. *See Gates*, 462 U.S. at 240.

Simply put, the affidavit is wholly conclusory. "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and . . . wholly conclusory statement[s] . . . fail[ ] to meet this requirement." *Id.* at 239. The only basis for the assertion that a crime has occurred is the conclusion of the affiant based on the conclusion of Investigator Riani. However, the magistrate's "action cannot be a mere ratification of the bare conclusions of others." *Id.* No facts in the affidavit provide a basis upon which the magistrate could have concluded that a crime had occurred.

"[A]n officer cannot manifest objective good faith if the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Diamond*, 628 A.2d at 1034 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). The objective reasonableness of the officer's actions must be judged as of the time the warrant was sought and without regard to the magistrate's finding that the affidavit established probable cause. *See Briggs*, 475 U.S. at 345. Thus, when an affidavit is "so conclusory with regard to its probable cause information as to render it a 'bare bones' affidavit," it cannot be rehabilitated by the *Leon* exception. *State v. Adkins*, 346 S.E.2d 762, 775 (W. Va. 1986). "The officer . . . cannot excuse his own default by pointing to the greater incompetence of the magistrate." *Briggs*, 475 U.S. at 346 n.9.

The affidavit that the officer prepared in this case did not support the issuance of a warrant because the affidavit contained no factual assertion of a crime, and it was so facially deficient that it manifestly negated objective reasonableness. Therefore, I dissent.