COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Humphreys and Kelsey
Argued at Richmond, Virginia


MICHAEL D. WARD
                                                         OPINION BY
v.      Record No. 0441-05-2                    JUDGE LARRY G. ELDER
                                                        MARCH 21, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Pamela S. Baskervill, Judge

Mary K. Martin (Eliades & Eliades, P.C., on brief), for appellant.

Stephen R. McCullough, Assistant Attorney General (Judith
Williams Jagdmann, Attorney General, on brief), for appellee.


Michael D. Ward (appellant) appeals from his bench trial convictions for possession of

cocaine with intent to distribute and possession of marijuana with intent to distribute. On appeal,

he contends the trial court erroneously denied his motion to suppress, which was based on

claimed deficiencies in the anticipatory warrant used to enter and search his residence. He also

contends the evidence was insufficient to prove he knew the package delivered to his home

contained the cocaine and marijuana and, thus, was insufficient to support his convictions. We

hold the anticipatory warrant was valid and that the evidence was sufficient to support

appellant's convictions. Thus, we affirm.

I.

BACKGROUND

In November 2003, Evelyn Cross, a United States Postal Inspector who "handle[d]

primarily drug investigations," investigated a suspicious package at the Petersburg main post

office. The package was addressed to an Anna Wilson at "129 Church Street, Petersburg, VA

23803." It listed the sender as "SGT FC John W. Wilson" with a return address of "Bldg[.] 1737, Ft. Bliss, TX 79906."

Inspector Cross consulted two different postal databases to which she had access, but she was unable to find a listing for an Anna Wilson at the address on the package, 129 Church Street, or at a similar Petersburg address, 129 South Old Church Street. Cross then called the post office, where she spoke with the supervisor and a mail carrier named Shirlon Saunders.

Shirlon Saunders testified that he had been delivering mail to South Old Church Street in Petersburg for a period of about four years prior to November 2003. Church Street in Petersburg, by contrast, was not on Saunders's route. Saunders identified Michael Ward as a person staying at the residence located at 129 South Old Church Street. Saunders testified that, before he was contacted by Postal Inspector Cross in November 2003, he had on two prior occasions delivered to appellant at 129 South Old Church Street packages addressed to Anna Wilson at appellant's address and bearing the name of sender John Wilson with a return address of Building 1737, Fort Bliss, Texas.

Around November 13, 2003, Saunders saw on the desk of a supervisor in the Petersburg post office a third package addressed to Anna Wilson. At trial, Saunders identified the package admitted into evidence, which was in a "paper bag type of packaging" and sent via priority mail, as the same package he saw on the supervisor's desk on November 13, 2003. Saunders testified that the two packages addressed to Anna Wilson that he had previously delivered to appellant's address had the same kind of packaging and also were sent by priority mail. Saunders was not asked to deliver the third package, which bore the notation, "Hold." Saunders said that when he delivered appellant's mail, "most of the time [appellant would] be outside" and that he had delivered the previous two packages addressed to Anna Wilson at appellant's address directly to appellant as appellant stood on the front porch of the residence.

Inspector Cross obtained a federal search warrant and opened the package at issue on November 19, 2003. Inside the package, she found 2.075 pounds of marijuana and 2.35 ounces of cocaine. Both substances had been heat sealed, placed in boxes, and wrapped in carbon paper, which Inspector Cross identified as methods used by drug traffickers to keep the odor of the drugs from being detected by drug-sniffing dogs. Inspector Cross repackaged some of the contraband in its original wrapping. After conferring with Mail Carrier Shirlon Saunders, Inspector Cross decided to attempt a controlled delivery of the package to appellant at 129 South Old Church Street and contacted the Petersburg narcotics unit for assistance.

In anticipation of Inspector Cross's attempting to make the controlled delivery, Petersburg Narcotics Detectives Patterson and Riley sought a search warrant for appellant's residence at "129 *s. old* church st." (Emphasis added). The warrant listed the things to be searched for as marijuana, cocaine, paraphernalia, and records of illegal drug trafficking. The affidavit accompanying the warrant included, in the list of things to be searched for, the package addressed to Anna Wilson at "129 *Church St.*" (Emphasis added). The affidavit stated further as follows:

> Evelyn Cross, a US Postal Inspector, became involved in a cocaine and marijuana investigation. A package [described in detail] . . . arrived in Richmond, VA on 11-13-03 . . . [and] is addressed to: Ms. Anna Wilson, 129 Church St., Petersburg, VA. On 11-19-03 Agent Evelyn Cross applied for and received a search warrant for [the] above mentioned package[, which contained substances that were field tested and] tested positive for [over 2 pounds of] marijuana and [2.4 ounces of] cocaine. The package has been maintained in the control and custody of your affiant[, Detective Riley]. Agents from the US Postal Service acting in an undercover capacity will pose as a delivery person for the post office and will attempt to deliver the package. The Petersburg Police Department working in conjunction with the US Postal Service will attempt to deliver the package on today[']s date. The search warrant will only be executed on the residence if the following occurs: the package and its contents are accepted and/or the package enters the residence itself, or the police observe the package exiting the residence, or the security of the controlled samples are at risk, or if

- 3 -

the undercover officer's safety is at risk. If none of the events
listed above occur the search warrant will not be executed and will
be returned to the issuing magistrate.

The affidavit did not recite any facts concerning appellant's prior acceptance of similar packages addressed to Anna Wilson at 129 South Old Church Street. The record also contains no evidence that the police officers orally provided the judge with any information concerning why they believed a nexus existed between appellant's address and the address on the package.

A circuit court judge issued the warrant on November 20, 2003, and Inspector Cross attempted the controlled delivery a few hours later. Dressed as a postal carrier, Inspector Cross approached appellant's residence and encountered him outside. She told him she was "glad he was here," handed him the letter mail that [she] had," and then "handed [him] the package in question addressed to Ms. Anna Wilson." Appellant "stood there in front of [her] holding the package and studying it." Inspector Cross told appellant she had "attempted to deliver th[e] package at another address the previous week and the lady said it wasn't hers." Inspector Cross said she "wanted to know if Anna Wilson lived here, if the package was his, and [appellant] said it was for him." As appellant was still holding the package, Inspector Cross "made the comment that [she] was glad because [she] didn't want them to be mad at [her] for misdelivering it again," and "[she] walked away." Just as Inspector Cross was exiting the fence, appellant "call[ed] [her] back," returned to her "one of the [letters] that [she had given] him, [which was addressed to a Barbara Robinson,] . . . and said that the person didn't live there. It doesn't belong here. This person doesn't live here." Appellant retained the package addressed to Anna Wilson and entered the house with it as Inspector Cross drove away in her postal vehicle.

After Inspector Cross notified the narcotics unit of what had transpired, Detectives Patterson and Riley executed the search warrant for appellant's residence. The detectives found appellant alone inside the residence and found the package, which remained unopened, on the

- 4 -

kitchen table with the other mail. In the bottom of a dresser drawer in one of two bedrooms, the detectives found a large clear plastic "zip" that contained "62 yellow, smaller zips" that were about "an inch by [an] inch" in size. Detective Patterson testified that the smaller zips "are typically used for packaging marijuana, $10 bags, sometimes $20 bags." Beneath the mattress in the second of two bedrooms, they found $250 in U.S. currency. From appellant's person, they seized a pager. Also from the residence, the detectives took a Virginia Power bill that bore only appellant's name and the address of 129 South Old Church Street.

Following the search, Detective Riley advised appellant of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and told appellant why they were there. Appellant told Detective Riley "the package was not his" and that "[h]e first thought the package was his because he was expecting tapes." Appellant did not say from whom he was expecting tapes or give any indication that he knew the sender whose name appeared on the box.

Prior to trial, appellant moved to suppress the evidence on the ground that the warrant was facially invalid. Appellant argued the warrant and affidavit failed to provide any nexus between Anna Wilson at 129 Church Street and the residence to be searched at 129 *South Old* Church Street. The Commonwealth argued the warrant was saved by the fact that the package had been determined to contain drugs and the affidavit said it would only be executed on the residence named "if the recipient of the mail at that residence accepted [the package]." The trial court denied the motion to suppress, concluding "the particulars," including "the description of the contents of the box and the fact that [the search was] conditional upon [the box's] being accepted," were "sufficient."[1]

---

[1] The trial court reconsidered the motion to suppress after hearing the parties' evidence at trial and ruled it had properly denied the motion.

After the Commonwealth presented its case-in-chief, appellant moved to strike, arguing the evidence failed to show he knowingly and intentionally possessed the contraband. The trial court denied the motion. Appellant then presented brief testimony from Detective Patterson and renewed his motion to strike. The trial court denied the motion and found appellant guilty of both charges.

II.

ANALYSIS

A.

VALIDITY OF ANTICIPATORY WARRANT
AND RULING ON MOTION TO SUPPRESS

On appeal of the denial of a motion to suppress, we consider the evidence adduced at both the suppression hearing and at trial, DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987), and we view it in the light most favorable to the prevailing party, granting to the evidence all reasonable inferences fairly deducible therefrom, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)). In the case of a warrantless search, we review *de novo* the trial court's application of defined legal standards such as probable cause to the particular facts of the case. Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663. However, "[w]hen reviewing a decision to issue a warrant, a reviewing court must grant 'great deference' [both] to the magistrate's interpretation of the predicate facts supporting the issuance of a search warrant *and* to the determination of whether probable cause supported the warrant." Janis v. Commonwealth, 22 Va. App. 646, 652,

472 S.E.2d 649, 652 (1996) (citing Illinois v. Gates, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527 (1983)) (emphasis added); see also Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663. "'A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.'" Williams v. Commonwealth, 4 Va. App. 53, 68, 354 S.E.2d 79, 87 (1987) (quoting Massachusetts v. Upton, 466 U.S. 727, 733, 104 S. Ct. 2085, 2088, 80 L. Ed. 2d 721 (1984)).

Probable cause for issuance of a search warrant exists when, "'given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Tart v. Commonwealth, 17 Va. App. 384, 387, 437 S.E.2d 219, 221 (1993) (quoting Gates, 462 U.S. at 238, 103 S. Ct. at 2332); see Garza v. Commonwealth, 228 Va. 559, 563, 323 S.E.2d 127, 129 (1984). "The initial determination of probable cause requires the magistrate to weigh the evidence presented in light of the totality of the circumstances." Tart, 17 Va. App. at 387, 437 S.E.2d at 221; see Miles v. Commonwealth, 13 Va. App. 64, 68, 408 S.E.2d 602, 604 (1991), aff'd on reh'g en banc, 14 Va. App. 82, 414 S.E.2d 619 (1992). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109, 85 S. Ct. 741, 746, 13 L. Ed. 2d 684 (1965) (citation omitted).

"Warrants[] issued when the contraband which gives rise to the search is not yet at the premises to be searched[] [are called] 'anticipatory search warrants[]'" and are valid as long as the warrant and affidavit establish "'a substantial probability that the seizable property will be on the premises when [they are] searched'" pursuant to the anticipatory warrant. McNeill v.

Commonwealth, 10 Va. App. 674, 677, 395 S.E.2d 460, 462 (1990) (quoting State v. Gutman, 670 P.2d 1166, 1172 n.4 (Alaska Ct. App. 1983)).

> [A]n anticipatory warrant is valid even though it does not state on its face the conditions precedent for its execution, when (1) "clear, explicit, and narrowly drawn" conditions for the execution of the warrant are contained in the affidavit that applies for the warrant application, and (2) those conditions are actually satisfied before the warrant is executed.

United States v. Moetamedi, 46 F.3d 225, 229 (2d Cir. 1995) (quoting United States v. Garcia, 882 F.2d 699, 703-04 (2d Cir. 1989)).  Thus, in determining the validity of an anticipatory warrant, a court may consider the facts surrounding its execution.[2]  Compare id. at 229 (holding court determining validity of anticipatory warrant may consider whether *post-issuance* events surrounding warrant's execution fulfilled stated condition precedent in order to satisfy probable cause requirement), with Whiteley v. Warden, 401 U.S. 560, 565 n.8, 91 S. Ct. 1031, 1035 n.8, 28 L. Ed. 2d 306 (1971) (noting that where warrant and affidavit are facially invalid because they contain insufficient evidence to provide probable cause for search, insufficiencies "cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing [judicial officer]"), McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984) (citing Whiteley, 401 U.S. at 565 n.8, 91 S. Ct. at 1035 n.8, for proposition that facts disclosed to magistrate at time of application for warrant but not included in writing in warrant or affidavit may be used to bolster warrant otherwise failing to show probable cause), and 2 Wayne R. LaFave, Search and Seizure § 4.3, at 504 & n.4 (4th ed. 2004) (quoting Whiteley and noting its "accept[ance] without question by most state courts").

"[A]nticipatory warrants balance the need to protect the subjects of searches from the abuses of

---

[2] The Court of Appeals for the Seventh Circuit "has warned against drawing conclusions based *solely* on what actually occurred since probable cause determinations must be based on the evidence before the magistrate or judge issuing the warrant."  United States v. Leidner, 99 F.3d 1423, 1429 (7th Cir. 1996) (emphasis added).

warrantless searches (under the exigent circumstances exception) and the practical needs of law enforcement personnel." United States v. Dennis, 115 F.3d 524, 529 (7th Cir. 1997).

Courts have recognized that anticipatory warrants pose additional concerns over "misunderstanding or manipulation by government agents" or third parties. Garcia, 882 F.2d at 703-04.

> [B]ecause the contraband is not presently located at the place to be searched at the time an anticipatory warrant is issued and because probable cause depends on contingent future events, anticipatory warrants present greater potential for abuse than other warrants. Most notably, the government or a third party, acting either intentionally or accidentally, could mail a controlled substance to a residence to create probable cause to search the premises where it otherwise would not exist. Thus, to prevent law enforcement authorities from creating the circumstances which give rise to probable cause to search, [courts have] held that probable cause to support an anticipatory warrant does not exist unless a sufficient nexus between the parcel and the place to be searched exists. For example, . . . a showing that the contraband was on a "sure course" to the destination to be searched[, as a result of circumstances not set in motion by law enforcement personnel, has been held to] demonstrate a sufficient nexus.

Dennis, 115 F.3d at 529-30 (citations omitted); see McNeill, 10 Va. App. at 677, 395 S.E.2d at 462 (adopting "sure course" analysis as method for determining whether probable cause exists for issuance of anticipatory warrant).

The "sure course" analysis does not require that law enforcement officials had no involvement whatever in placing the package in the mail or in effecting its delivery to the particular location to be searched. See, e.g., United States v. Dornhofer, 859 F.2d 1195, 1198 (4th Cir. 1988) (holding contraband was on "sure course" to defendant's residence where placed in U.S. mail at defendant's request by police conducting pornography "sting"), cited with approval in McNeill, 10 Va. App. at 678, 395 S.E.2d at 463 (upholding validity of search warrant under "sure course" requirement where police intercepted package and conducted controlled delivery to person at address on street with name similar but not identical to street name on

package).  It is merely one way of requiring proof of a constitutionally sufficient *nexus* between the package and the premises to be searched--a nexus that both *maximizes* the chance that the package will actually be on the premises at the time of the search and *minimizes* the likelihood of either "misunderstanding or manipulation by government agents" or third parties.

A controlled delivery by law enforcement personnel to a particular address, as occurred in this case, maximizes the chances that the package will be on the premises at that address when the search warrant is executed.  See Dennis, 115 F.3d at 531 (recognizing that "all types of government-controlled deliveries are more likely to reach their destinations than other types of deliveries"); United States v. Outland, 476 F.2d 581, 583 (6th Cir. 1973) (holding that where "the magistrate was told by the Customs official in his affidavit that the packages, then in the hands of a postal inspector, would be delivered by the United States Postal Service, there was probable cause to believe such packages would be so delivered").  Appellant's concern in this case is over *minimizing* the likelihood of either "misunderstanding or manipulation by government agents" or third parties based on discrepancies between the address on the package and the address to which the package was actually delivered--the address for which the search warrant was issued.  We hold that, in a case involving such an address discrepancy, conditioning execution of a warrant for the search of the residence on *knowing acceptance* of the package by someone at that address--acceptance by someone who has had the address discrepancy pointed out to him or her--and the taking of the item into the residence adequately protects individuals residing at that address from Fourth Amendment abuses that might otherwise result from execution of an anticipatory warrant.  The warrant and search challenged in appellant's case met these conditions.

In Dennis, for example, the Court of Appeals for the Seventh Circuit affirmed a search conducted under similar facts.  115 F.3d at 528.  In that case, the package determined to contain

drugs was addressed to a duplex and did not indicate in which of the two apartments the addressee resided. Id. "[T]he warrant application and affidavit sought permission to search [only] one of the [two] apartments" but "sought permission to determine which apartment would be searched at the time of the controlled delivery, based upon who accepted the package and into which apartment it was taken." Id. Based upon the affidavit and application, the district court issued the anticipatory search warrant. Id. In response to the defendants' challenge to the warrant, the Court of Appeals for the Seventh Circuit held that these conditions were sufficiently "clear, explicit and narrowly drawn" and that the evidence established the executing officers entered and searched the first floor apartment only after Dennis "accepted delivery of the package" and "took [it] into the first floor apartment." Id. at 529. Under these circumstances, the court held the use of an anticipatory warrant properly "balance[d] the need to protect the subject[] of [the] search[] from the abuses of [a] warrantless search[] (under the exigent circumstances exception) and the practical needs of law enforcement personnel." Id.

Although appellant's case did not involve a duplex, as Dennis did, we hold similar principles apply. Here, the package bore an address of 129 Church Street. The address of the residence for which police sought a search warrant, 129 *South Old* Church Street, although not identical to the address of 129 Church Street on the package, was similar enough to explain the officers' motivation in seeking an anticipatory search warrant in case further inquiry confirmed the package was, in fact, intended for someone at 129 South Old Church Street. Like in Dennis, the affidavit accompanying the search warrant application expressly indicated the warrant would be executed only if "the package and its contents are accepted and . . . the package enters the residence itself."[3]

---

[3] The affidavit included additional language, "or the police observe the package exiting the residence, or the security of the controlled samples are at risk, or if the undercover officer's

- 11 -

Finally, undisputed evidence established that these conditions precedent were met before the search warrant for the residence was executed. Evelyn Cross, the postal inspector posing as a carrier for purposes of attempting delivery, met appellant outside the residence at 129 South Old Church Street and handed him the package addressed to Anna Wilson at 129 Church Street. While appellant "stood there . . . holding the package and *studying it*," Inspector Cross told appellant she had "attempted to deliver th[e] package at another address the previous week and the lady said it wasn't hers." (Emphasis added). Inspector Cross specifically inquired of appellant whether Anna Wilson, the addressee on the package, "lived here [at 129 South Old Church Street], if the package was for [appellant], and *[appellant] said it was for him*." (Emphasis added). While appellant held the package, Inspector Cross said she "was glad because [she] didn't want them to be mad at [her] for misdelivering [the package] again." As Inspector Cross walked away, appellant "call[ed] [her] back," returned to her "one of the [letters] that [Inspector Cross had previously given] him, [which was addressed to a Barbara Robinson,] . . . and said that the person didn't live there. [This letter] doesn't belong here." Inspector Cross then left, and appellant entered the residence with the package. Not until after the police officers received word from Inspector Cross as to these events did they execute the search warrant. See also McNeill, 10 Va. App. at 675-78, 395 S.E.2d at 461-63 (upholding search conducted pursuant to anticipatory warrant despite discrepancy between name of street on package and name of street on which residence searched was actually located but without indicating whether discrepancy and investigation thereof were revealed to magistrate issuing warrant); id. at 678, 395 S.E.2d at 463 (recognizing that "those engaged in illicit drug trafficking frequently employ

---

safety is at risk." However, none of the contingencies came into play, and appellant does not challenge the warrant on the basis of any of this language.

subterfuges, such as the use of fictitious names" and that "[s]uch use does not affect the validity of anticipatory warrants when the contraband is on a *sure course* to its destination").

The holding in United States v. Ricciardelli, 998 F.2d 8, 12-14 (1st Cir. 1993), relied upon by appellant, does not support a different result. Ricciardelli involved a warrant for the search of a residence that was conditioned not upon a package's being delivered to the residence but "rather[] on [the resident's] personal receipt of the [package] wherever he might be and wherever he might take [the package]," whether or not he took the package to his residence. Id. at 13. The Court held "the event that triggers the search must be the delivery of the contraband to the premises to be searched, thereby leaving as little as possible to the discretion of the agent executing the warrant." Id.

Although Ricciardelli could be construed to contain some arguably broader language regarding the sure course analysis, in United States v. Gendron, 18 F.3d 955 (1st Cir. 1994), the Court of Appeals for the First Circuit revisited its holding in Ricciardelli and limited it to cases in which significant doubt exists about whether the contraband would ever be delivered to the individual at the residence listed in the search warrant or at some other place such as the post office. 18 F.3d at 966-67; see United States v. Leidner, 99 F.3d 1423, 1428 (7th Cir. 1996). No such doubt existed in this case. Pursuant to the warrant, acceptance of the package, if it occurred, was to take place at the residence to be searched, and the warrant required that the package had to be taken into the residence. These conditions provided the nexus that was missing in Ricciardelli.

Assuming without deciding that mere *delivery* of the package would have been insufficient to establish the package here was on a sure course to 129 South Old Church Street given the address discrepancy, the warrant and affidavit required more--"accept[ance]" of the package and "ent[ry into] the residence itself"--and the evidence, viewed in the light most

- 13 -

favorable to the Commonwealth, clearly established those conditions precedent were met before the warrant was executed.

We hold that where a package will be the subject of a controlled delivery, potential deficiencies in the address may be compensated for, and the sure course requirement satisfied, by a condition in the anticipatory warrant that permits search of the premises only upon knowing acceptance of the package by someone at the address to be searched. Because we conclude the search was constitutional, we need not consider appellant's additional argument that the good faith exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), does not apply.

B.

SUFFICIENCY OF THE EVIDENCE TO PROVE<br>
KNOWING AND INTENTIONAL POSSESSION OF MARIJUANA AND COCAINE

When considering the sufficiency of the evidence on appeal of a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to that evidence all reasonable inferences deducible therefrom. See, e.g., Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

"To convict a person of possession of illegal drugs 'the Commonwealth must prove that the defendant was aware of the presence and character of the drugs and that he intentionally and consciously possessed them.'" Castaneda v. Commonwealth, 7 Va. App. 574, 583, 376 S.E.2d 82, 86 (1989) (en banc) (quoting Andrews v. Commonwealth, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975)). Here, appellant does not dispute that he possessed *the package* but argues the evidence failed to prove he knew drugs were inside and, thus, that it failed to prove he

- 14 -

"'intentionally and consciously'" possessed the drugs. Id. (quoting Andrews, 216 Va. at 182, 217 S.E.2d at 814).

Intent may, and usually must, be proved by circumstantial evidence, Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988), such as a person's conduct and statements, Long, 8 Va. App. at 198, 379 S.E.2d at 476. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

Here, the only reasonable hypothesis flowing from the evidence and the inferences therefrom, viewed in the light most favorable to the Commonwealth, was that appellant knew the package contained contraband and that he intentionally and consciously possessed the drugs when he accepted delivery of the package from Inspector Cross on November 20, 2003. The evidence established that appellant had personally accepted delivery of two previous packages that closely resembled the package Inspector Cross delivered on that date. Those packages, like the subject package, had been wrapped in a "paper bag type of packaging" and sent by priority mail. Also like the subject package, they had been addressed to Anna Wilson, although at appellant's address of 129 South Old Church Street rather than simply 129 Church Street, and they had borne a sender's name of John Wilson with a return address of Building 1737, Fort Bliss, Texas.

Before Inspector Cross attempted to deliver the subject package on November 20, 2003, she consulted two different postal databases to which she had access but found no record of an

Anna Wilson residing at either the address on the package, 129 Church Street, or appellant's address, 129 South Old Church Street. When Inspector Cross attempted to deliver the package to 129 South Old Church Street, she personally encountered appellant, handed him the package, and remained at the scene while he "stood there in front of [her] holding the package and *studying it*." (Emphasis added). Inspector Cross specifically told appellant she had "attempted to deliver th[e] package at another address the previous week and the lady said it wasn't hers." Cross also specifically said to appellant she "wanted to know if Anna Wilson [the addressee] lived here, if the package was his," and "*[appellant] said it was for him*." (Emphasis added). Thus, after Inspector Cross specifically pointed out to appellant that the package was addressed to an Anna Wilson and appellant closely examined the package in Cross's presence, appellant expressly admitted to Cross that the package, although addressed to someone else, was actually for him. Appellant also immediately thereafter returned to Cross a letter addressed to a Barbara Robinson, saying that letter "doesn't belong here." However, appellant retained the package addressed to Anna Wilson and entered the house with it.

Appellant's admissions, which permitted the inference he was using a fictitious name--coupled with the manner of packaging of the drugs to prevent detection by drug sniffing dogs, appellant's prior receipt of two almost identical packages, and the inference that drugs are a thing of value people are unlikely to abandon or ship to another without warning[4]--were sufficient to support a finding that appellant was expecting to receive the drugs through the mail, addressed to an Anna Wilson, and that he intentionally and consciously possessed them even before he opened the package.

---

[4] Our cases recognize that drugs are a commodity of significant value, unlikely to be abandoned or carelessly left in an area. Powell v. Commonwealth, 27 Va. App. 173, 178, 497 S.E.2d 899, 901 (1998); see also Brown v. Commonwealth, 15 Va. App. 1, 9, 421 S.E.2d 877, 883 (1992) (en banc) ("[T]he finder of fact may infer from the value of drugs found on premises

III.

For these reasons, we hold the anticipatory warrant, which was executed only after appellant accepted delivery of the package containing the drugs and took it into his home, was valid.  We also hold the evidence was sufficient to prove appellant intentionally and consciously possessed the drugs inside the package after he did so.  Thus, we affirm the challenged convictions.

<u>Affirmed.</u>

owned or occupied by an individual that it is unlikely anyone who is a transient would leave a thing of great value in a place not under his dominion and control." (citation omitted)).