COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Senior Judge Overton
Argued at Richmond, Virginia


GERARD VERNON MORTON

MEMORANDUM OPINION[*] BY
v.        Record No. 2938-04-2               JUDGE JAMES W. HALEY, JR.
                                             MAY 16, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Catherine C. Hammond, Judge

James Edward Sheffield for appellant.

Stephen R. McCullough, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Gerard Morton appeals from his convictions by jury of possession with intent to

distribute cocaine and possession of a firearm while in possession of a controlled substance.

Appellant asserts the trial court erred in denying his motions to suppress both evidence seized

pursuant to an "anticipatory" search warrant and statements made to police before receiving his

Miranda rights.  We affirm appellant's convictions.

I.

In determining whether or not the trial court erred in denying Morton's motions to

suppress, "we consider the evidence and all reasonable inferences flowing from that evidence in

the light most favorable to the Commonwealth, the prevailing party at trial."  Jackson v.

Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citing Bass v. Commonwealth,

259 Va. 470, 475, 525 S.E.2d 921, 923-24 (2000)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Also, "'[t]he jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.'" Fritter v. Commonwealth, 45 Va. App. 345, 351, 610 S.E.2d 887, 890 (2005) (quoting Clark v. Commonwealth, 30 Va. App. 406, 409-10, 517 S.E.2d 260, 261 (1999)).

II.

On May 20, 2003, Inspector Don Maxwell of the Henrico County Police received information from informant Mitchell Fowler concerning appellant's involvement in the sale of narcotics. With this information, Maxwell obtained a search warrant for the premises at 2701 Cushing Drive in Henrico County. The record reflects that appellant resided at that address, with the sole other occupant being his mother. The affidavit, authored by Maxwell, stated in pertinent part:

> On Monday May 19, 2003 your affiant had the . . . Informant contact Morton by telephone, at 2701 Cushing Drive, and set up a deal for Tuesday May 20, 2003 in which the . . . Informant will meet Morton at 2701 Cushing Drive and purchase ½ kilogram of cocaine for $15,000.00. . . . After Morton accepts payment for the cocaine and delivers the cocaine to the . . . Informant, the search warrant will be executed to recover the monies used to purchase the cocaine as well as other evidence in the Conspiracy to Distribute Cocaine.
>
> This search warrant will only be executed on the residence if the following occurs: The Confidential and Reliable Informant enters 2701 Cushing Drive and makes the exchange of money for cocaine or . . . enters 2701 Cushing Drive to make the exchange and is at risk from persons located within 2701 Cushing Drive. If none of these events occurs the search warrant will not be executed and will be returned to the issuing magistrate.[1]

The warrant specified the things to be searched as items associated with the distribution of narcotics "including but not limited to: baggies, scales, ledgers, monies, photographs, electronic monitoring devices or other paraphernalia."

---

[1] Both parties agree that such language renders this an "anticipatory" search warrant.

- 2 -

Inspector Maxwell, accompanied by other Henrico police officers, executed this warrant later the same day. As specified in the warrant, the informant, Fowler, contacted appellant on May 19 and arranged to purchase one-half kilo of cocaine from appellant the following day. On May 20 and after Maxwell gave him $15,000 in police funds, Fowler proceeded to appellant's residence at 2701 Cushing Drive, entered the same, and emerged "[n]o more than ten minutes" later with one-half kilo of cocaine. Fowler testified that once inside, "we sat down, um, counted the money, and Gerard put the coke on the table, and we exchanged the coke for the money."

After leaving that address, Fowler met with Maxwell and gave him the cocaine from the sale. Pursuant to the search warrant, police entered the residence at 1:05 p.m. and secured the premises. Maxwell arrived and entered the residence at 1:20 p.m.

Upon his arrival, Maxwell began talking with appellant, who had been placed in handcuffs by other officers prior to Maxwell's arrival. Maxwell described the interaction as follows:

> When we first went in, [appellant] immediately was cooperative. He was talking to us, and it came to a point where, um, I was, I guess we were just in conversation, and I wanted to advise him of his Miranda before we went into anything else with the house. And then, like I said, we were in there for 27 minutes when I advised him of Miranda.

Maxwell continued:

> After, after we talked, I told him that he was going to be charged with the distribution of cocaine. . . . I told him that time was of an issue. If he wanted to cooperate, now was the time to do it because we knew that somebody was expecting that money and whether, it was up to him whether he wanted to cooperate. And we talked for, like I said, probably 20 minutes, him asking questions, me answering questions, and he was cooperative the whole time.

Appellant's cooperation, Maxwell explained, consisted of informing the Inspector "who his source was," so that Maxwell could elicit his help in arresting that individual.

Maxwell advised appellant of his <u>Miranda</u> rights at 1:47 p.m., "27 minutes into [the conversation]." Maxwell further testified, "I asked him if he wanted to continue to, uh, cooperate and work with the police, and he said, I don't have a problem with that. And that started his cooperation. . . . He told me about [his supplier] Sean Taylor before Miranda. And then he, after Miranda, he continued to cooperate." Later in his testimony, Maxwell reiterated, "And again, [appellant] said he understood [<u>Miranda</u>], he wanted to cooperate. And a minute after that, we started making phone calls to who I knew then was Sean, who he owed the money to."

At trial, the Commonwealth introduced a certificate of analysis confirming the substance Fowler gave to Maxwell as "four hundred and ninety-four point seven grams" "cocaine, hydrochloride." Maxwell also testified that police seized $14,500 in cash and a Raven 25 semiautomatic pistol from 2701 Cushing Drive.[2] Maxwell testified that he later test-fired the gun and confirmed its operability. Police found the weapon in a back bedroom that appellant had previously identified as his own. Maxwell testified that appellant "pointed [the firearm] out to the officers." Another officer testified at trial that the firearm "was actually physically located inside of a suitcase, which was inside of the bedroom . . . ."

During the search, police also seized digital scales, razor blades, baking soda, and several other separately packaged quantities of cocaine. Maxwell testified that baking soda is often combined with pure cocaine in order to increase quantity for resale purposes. Thus, as Maxwell concluded "given all the circumstances," the presence of these items is "very inconsistent with personal use."[3]

---

[2] Fowler, the informant, testified that during the transaction appellant miscounted the money and mistakenly gave him $500 back. Fowler returned this $500 to Inspector Maxwell.

[3] Appellant stipulated that Maxwell qualified as an expert in narcotics.

Sean Taylor appeared as a witness for the Commonwealth and testified that he delivered 500 grams of cocaine to appellant at his home on the morning of May 20. Taylor said that appellant paged him and asked him to deliver that quantity of cocaine. Taylor testified that appellant was to pay him $15,000 for the cocaine later that day. On the evening of May 20, when Taylor returned to appellant's home to collect the money, police arrested him and charged him with conspiracy to distribute cocaine.

Appellant testified in his own defense. He testified that he lived at 2701 Cushing Drive and that his mother was the only other occupant at that address. Appellant testified that he met with Fowler, the informant, on the morning of May 20 at the post office. His purpose in meeting Fowler was to get "a ride home because [his] mother was going to her friend's, and [appellant] was dropping the car off." Appellant explained that his conversation with Fowler did not involve drugs; instead "the discussion was pertaining to a young lady that was, that we both sort of was seeing" and also involved cutting appellant's grass. He explained that Fowler returned later to "see if I had got in contact with the guy I was telling him about in reference to cutting the grass" and reiterated that their conversation did not center on a drug transaction. Appellant testified that he "initially" told the police "about the firearm." He further explained that he "believe[ed] this was a setup" and only admitted the cocaine belonged to him because he was "not going to let it fall back on [his] mom, period."

Appellant sought to suppress the evidence police seized from 2701 Cushing Drive and the statements made to police before Maxwell administered <u>Miranda</u> warnings at 1:47 p.m. Appellant argued the search warrant, when issued, lacked probable cause and that appellant's statements made prior to the <u>Miranda</u> warning were not made knowingly and voluntarily. The trial court denied each motion to suppress. The jury subsequently convicted appellant of

possession with intent to distribute cocaine and possession of a firearm while possessing a controlled substance. This appeal followed.

## III.

Generally speaking, when reviewing a trial court's ruling on a motion to suppress, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E. 2d 259, 261 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

## A.

## VALIDITY OF THE ANTICIPATORY SEARCH WARRANT

Initially, we recognize that "no [search] Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV, § 1. "Probable cause for issuance of a search warrant exists when, 'given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Ward v. Commonwealth, 47 Va. App. 733, 743, 627 S.E.2d 520, 525 (2006) (quoting Tart v. Commonwealth, 17 Va. App. 384, 387, 437 S.E. 2d 219, 221 (1993)).

We note that each party in this matter recognizes that the warrant at issue here is commonly referred to as an "anticipatory search warrant." On March 21, 2006, the United States Supreme Court decided United States v. Grubbs, 126 S. Ct. 1494 (2006), which deals with the precise issue of anticipatory search warrants. There, the Court held:

> Anticipatory warrants are . . . no different in principle from
> ordinary warrants. They require the magistrate to determine
> (1) that it is *now probable* that (2) contraband, evidence of a crime,
> or a fugitive *will be* on the described premises (3) when the

- 6 -

warrant is executed. It should be noted, however, that where the anticipatory warrant places a condition (other than the mere passage of time) upon its execution, the first of these determinations goes not merely to what will probably be found *if* the condition is met.

Id. at 1500 (emphasis in original). Justice Scalia, writing for the Court, continued:

In other words, for a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that *if* the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular place," but also that there is probable cause to believe the triggering condition *will occur*. The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination.

Id. (citation omitted) (emphasis in original).

This Court also recently addressed anticipatory search warrants in Ward. There, we held that

[w]arrants issued when the contraband which gives rise to the search is not yet at the premises to be searched are called "anticipatory search warrants" and are valid as long as the warrant and affidavit establish "a substantial probability that the seizable property will be on the premises when searched" pursuant to the anticipatory warrant.

47 Va. App. at 744, 627 S.E.2d at 526 (citation omitted). "Thus, in determining the validity of an anticipatory warrant, a court may consider the facts surrounding its execution." Id.

We will address each of the two prerequisites necessary for a valid anticipatory search warrant as articulated in Grubbs in order. The first, that being the likely presence of contraband or evidence of a crime in the place to be searched after the occurrence of a triggering event, was certainly satisfied here. Here, Inspector Maxwell arranged for an informant, Fowler, to enter 2701 Cushing Drive with $15,000 to consummate a transaction with appellant for cocaine. The triggering event was specified in the warrant as follows:

> This search warrant will only be executed on the residence if the following occurs:  The Confidential and Reliable Informant enters 2701 Cushing Drive and makes the exchange of money for cocaine or . . . enters 2701 Cushing Drive to make the exchange and is at risk from persons located within 2701 Cushing Drive.

If neither of these events occurred, police would not execute the warrant.

As such, police would not execute this warrant unless either Fowler finished the transaction and brought the purchased cocaine to Maxwell or police determined that Fowler was at risk from persons inside the residence.  In either case, "there [was] a fair probability that contraband or evidence of a crime [would] be found" in the residence.  Grubbs, 126 S. Ct. at 1500.  If after emerging from appellant's residence Fowler gave cocaine to Inspector Maxwell, then certainly one could assume the money used to consummate that transaction was present in the residence and also "a fair probability" that other items indicative of conspiracy to distribute cocaine were present as well.  If the second event were to occur, that being the informant was at risk from those inside the residence, then there is "a fair probability" of evidence of another crime, that being a crime against Fowler's person.  Either way, the first prerequisite is satisfied.

The second prerequisite deals with the triggering event itself; there must be probable cause to believe the triggering event will in fact occur.  As Inspector Maxwell himself was responsible for orchestrating the triggering event, there is no question that the magistrate had probable cause to believe the event would occur.  Moreover, the affidavit contained information describing informant's preliminary actions:  "On Monday May 19, 2003 your affiant had the . . . Informant contact Morton by telephone, at 2701 Cushing Drive, and set up a deal for Tuesday May 20, 2003 in which the . . . Informant will meet Morton at 2701 Cushing Drive and purchase ½ kilogram of cocaine for $15,000.00."  Thus, the affidavit contained particular information describing an appointment at a specific time and at a specific place.  That, coupled with

Maxwell's oversight of the entire process, gave the magistrate probable cause to issue a valid anticipatory search warrant.

We therefore hold that the two prerequisites for issuance of a valid anticipatory search warrant were met in the instant case. Maxwell's affidavit gave the magistrate grounds to conclude that there was both "a fair probability that contraband or evidence of a crime will be found" at 2701 Cushing Drive and "that there is probable cause to believe the triggering condition will occur." Grubbs, 126 S. Ct. at 1500. Accordingly, the trial court did not err in denying appellant's motion to suppress evidence seized pursuant to this search warrant.

B.

APPELLANT'S PRE-MIRANDA STATEMENTS TO POLICE

Appellant asserts that the trial court erred in admitting statements he made to police before being advised of his Miranda rights. We assume without deciding that appellant's argument has merit and hold that any error, if present at all, was harmless.[4]

"When a federal constitutional error is involved, a reviewing court must reverse the judgment unless it determines that the error is harmless beyond a reasonable doubt." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) (citations omitted).

> The reviewing court must determine "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" In making that determination, the court must consider, among other factors, "the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case."

Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78 (2000) (citations omitted).

---

[4] At oral argument, appellant's counsel conceded that if this Court was to find the anticipatory search warrant in this case valid, then the evidence seized would be sufficient to find him guilty of the two charges, independent of any statements he made to police.

We will first address appellant's assertion that the trial court erred in admitting incriminating statements related to the charge of possession with intent to distribute cocaine. The record reflects that appellant gave Inspector Maxwell his supplier's name both before and after being given Miranda warnings. However, nowhere in the record can we find a statement from appellant admitting to the sale of cocaine. Thus, we hold the incriminating statement appellant made, relating to his supplier Sean Taylor, was cumulative of other evidence and accordingly, harmless beyond a reasonable doubt.

As the Virginia Supreme Court held in McCain v. Commonwealth, 261 Va. 483, 545 S.E.2d 541 (2001),

> Several factors may constitute probative evidence of intent to distribute a controlled substance. These factors include the quantity of the drugs seized, the manner in which they are packaged, and the presence of an unusual amount of cash, equipment related to drug distribution, or firearms.

Id. at 493, 545 S.E.2d at 547. Moreover,

> "Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it." . . . Expert testimony, usually that of a police officer familiar with narcotics, is routinely offered to prove the significance of the weight and packaging of drugs regarding whether it is for personal use.

Askew v. Commonwealth, 40 Va. App. 104, 109, 578 S.E.2d 58, 60-61 (2003).

Here, Maxwell, an expert familiar with narcotics, testified that the differently bagged quantities of cocaine, along with the presence of digital scales, razor blades, and baking soda, were "very inconsistent with personal use." Specifically, Maxwell testified that the presence of baking soda was significant, as the same is used to increase the quantity of pure cocaine for distribution purposes. Thus, the cumulative evidence of possession with intent to distribute cocaine renders the allegedly erroneous admission of appellant's pre-Miranda statements harmless beyond a reasonable doubt.

- 10 -

Likewise, any statement of appellant claiming ownership of the firearm seized by police was merely cumulative of other evidence of ownership. Code § 18.2-308.4 provides that "[i]t shall be unlawful for any person unlawfully in possession of a controlled substance . . . to simultaneously with knowledge and intent possess any firearm." Possession of the firearm may be either actual or constructive, and this Court has held on prior occasions that the analysis used to establish constructive possession of drugs is applicable to firearms as well. See Archer v. Commonwealth, 26 Va. App. 1, 11-12, 492 S.E.2d 826, 831 (1997); Blake v. Commonwealth, 15 Va. App. 706, 708-09, 427 S.E.2d 219, 220-21 (1993).

> To support a conviction based upon constructive possession, the Commonwealth "must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control."

Jefferson v. Commonwealth, 14 Va. App. 77, 81, 414 S.E.2d 860, 862 (1992). Here, police seized the firearm from a suitcase in appellant's bedroom. Not only was the weapon in close proximity to the cocaine, scales, razor blades, and baking soda seized by police, the weapon was readily accessible to appellant within his own bedroom. Thus, the jury as trier of fact could rationally conclude that this weapon belonged to appellant independent of any statement from him that claimed ownership. Any error, if present at all, in admitting such a statement would be harmless, given the cumulative evidence of possession of the firearm while in possession of a controlled substance.

## IV.

In light of the foregoing, we hold that the anticipatory search warrant present here contained probable cause for the specified search of appellant's home and that any error, if present at all, in admitting appellant's pre-Miranda statements was harmless, given the fact that

the statements were cumulative of other evidence presented at trial.  As such, appellant's

convictions are affirmed.

<u>Affirmed.</u>