COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Petty
Argued at Alexandria, Virginia


BRIAN WILLIAM PATTON

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0704-06-4                      JUDGE WILLIAM G. PETTY
                                                    AUGUST 7, 2007
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                            John E. Kloch, Judge

            Jonathan Shapiro for appellant.

            Craig Stallard, Assistant Attorney General (Robert F. McDonnell,
            Attorney General; Denise C. Anderson, Assistant Attorney General,
            on brief), for appellee.


        Appellant, Brian William Patton, was convicted by a jury of possession of cocaine with

intent to distribute, in violation of Code § 18.2-248; conspiracy to possess with intent to distribute

cocaine, in violation of Code §§ 18.2-248 & 18.2-22; and transportation of one ounce or more of

cocaine into the Commonwealth with intent to sell and distribute, in violation of Code

§ 18.2-248.01.  On appeal, Patton challenges the trial court's denial of his motion to suppress

evidence and its refusal to exclude evidence of wire transfers.  We disagree with Patton and affirm

the judgment of the trial court.

                                    I. BACKGROUND

        On appeal, we view the evidence in the light most favorable to the Commonwealth, the

party prevailing below, and grant to it all reasonable inferences fairly deducible from the evidence.

Ragland v. Commonwealth, 16 Va. App. 913, 915, 434 S.E.2d 675, 676-77 (1993).  "That principle

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

requires us to 'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)).  So viewed, the evidence establishes the following.

<u>Packages Shipped from Colombia and Trinidad and Tobago</u>

February Package

On February 11, 2005, United States Customs agents intercepted a package being processed at the Federal Express hub office in Memphis, Tennessee.  The package was addressed to Brian Patton, 8280 Greensboro Drive, McLean, Virginia.  According to Scott Solecki, one of the customs agents who intercepted the package, the package came from Colombia, a known source country for cocaine.  After a K-9 dog indicated that there were narcotics in the package, Agent Solecki opened the box and discovered that the auto parts in the package had cocaine secreted inside of them.  After the package was transported to the Washington, D.C. area Office of Immigration and Customs Enforcement (ICE), a number of agents participated in an attempted controlled delivery of the package.

The location, 8280 Greensboro Drive, is a large multi-story professional building.  The agents could not locate a listing for "Brian Patton" in the office building, despite attempting to find a mailing office and contacting the building management office.  Following the unsuccessful controlled delivery attempt, the agents returned the package to ICE's seized property vault.  During February 2005, appellant Brian Patton worked for Communique Conferencing, Inc., located at 8280 Greensboro Drive in McLean, Virginia.

March Package

On March 15, 2005, customs agents intercepted two more packages in Miami, Florida.  These packages were addressed to Joseph Patrick, 5800 Quantrell Avenue, Apartment 1001,

Alexandria, Virginia, and came from Trinidad and Tobago – another known source country for cocaine. Following routine screening for packages entering the United States, customs agents discovered that these packages contained a total of approximately one pound of cocaine hidden within the cardboard lining of each box

The Miami facility sent the packages to the Washington, D.C. ICE office. Following their arrival in the D.C. area, an ICE officer delivered the packages to Sergeant Benjamin George, the sergeant in charge of the narcotics section of the Alexandria Police Department. Sergeant George contacted Inspector Tony Gooden of the United States Postal Service to make immediate arrangements for a controlled delivery of the two boxes because of his concern that the controlled delivery proceed quickly so that the addressee would not become suspicious that something had gone wrong with his expected drug shipment.

Search Warrant

Detective Christopher Flood, another member of the Alexandria Police Department assigned to this case, prepared an affidavit for a search warrant of 5800 Quantrell Avenue, Apartment 1001. Detective Flood's affidavit stated, in pertinent part:

> On March 16, 2005, your affiant received information from [ICE], that two boxes had been intercepted by U.S. Customs agents in Miami, Florida, that arrived from Trinidad & Tobago. [An ICE agent] advised your affiant that U.S. Customs recognizes Trinidad & Tobago as a source country for cocaine. The boxes had been x-rayed and probed and it was discovered that approximately ½ pound of powder cocaine was concealed in the cardboard lining of each box. The powder cocaine was field-tested positive by U.S. Customs agents in Miami. The two boxes were sent by a Randy Sookoo of 28 Montoe Street, Claxton, Trinidad & Tobago, and were addressed to a Joseph Patrick at 5800 Quantrell Avenue, apartment #1001, Alexandria, Virginia, 22312. . . . 5800 Quantrell Avenue, apartment #1001, Alexandria, Virginia is a private residence that is located in a high crime area.

Detective Flood obtained a search warrant based on this affidavit. The search warrant authorized a search for "[c]ocaine, any paraphernalia related to the sale or use of cocaine, any

records, documents or electronic storage devices related to the sale or use of cocaine, and any monies or proceeds from the sale of cocaine." Members of the Alexandria Police Department did not do any other investigation or surveillance prior to receiving the search warrant.

Controlled Delivery

On March 17, Sergeant George, Inspector Gooden, and a number of Alexandria Police Department detectives made a controlled delivery of the packages. Inspector Gooden dressed as a United States Postal Service letter carrier and delivered the parcels to 5800 Quantrell Avenue, Apartment 1001, while the others observed the delivery from various locations within the building. When Inspector Gooden knocked on the apartment door, an individual Inspector Gooden later identified as Patton answered the door. Inspector Gooden identified this individual as Patton. Patton accepted delivery of both packages, signing the name of the addressee, Joseph Patrick, for both. Patton set the packages inside the apartment, and Inspector Gooden walked away.

After the delivery was complete, Detective Salas observed someone in the hallway and followed that person down the hallway towards the elevator. Detective Salas identified the person he followed as Patton. Detective Salas, who was wearing Alexandria police raid attire that identified him as a police officer, approached Patton and verbally identified himself as an officer. In reply to Detective Salas' questions, Patton stated that he had been visiting a friend in the apartment next to Apartment 1001 and that his friend was no longer there to verify his visit. Patton also denied having a key to Apartment 1001. Detective Salas asked for Patton's identification, and, as Patton was retrieving it, Sergeant George came toward them and identified Patton as the individual who had accepted delivery of the packages. At that point, Detective Salas took Patton into custody.[1]

---

[1] Detective Salas also searched Patton and discovered what appeared to be a burned cigarette inside a plastic bag in Patton's pants pocket. Later, it was discovered that Patton had cocaine residue in his pants pocket.

<u>Execution of Search Warrant</u>

The police officers executed the warrant following the conclusion of the controlled delivery and Patton's arrest. After knocking on the door and announcing their presence, Sergeant George ordered a forced entry in order to preserve officer safety and to prevent the destruction of evidence. Detective Flood noticed that the packages were still sitting immediately inside the door and were still sealed. During the search, the police found cocaine in a kitchen cabinet. The police also found various documents throughout the apartment, many of which they seized, although Detective Flood testified that they did not take every document in the apartment.

<u>Wire Transfer Evidence</u>

Among the documents found in the apartment were various wire transfer documents, indicating that Patton wired money by Western Union between March 1, 2002 and January 26, 2004. The Commonwealth subpoenaed records from Stacey Anderson, the manager of subpoena operations for Western Union Financial Services. As the custodian of the records, Anderson testified regarding those documents. Patton sent wire transfers to Trinidad and Tobago on February 7, 2005; January 25, 2004; August 12, 2003; November 6, 2002; October 18, 2002; October 19, 2002; March 1, 2002; and March 2, 2002. Over three years, the total amount Patton wired to Trinidad and Tobago was approximately $25,000. During his closing argument, the Commonwealth's attorney referenced the wire transfers as evidence of conspiracy.

## II. ANALYSIS

<u>Standard of Review</u>

In reviewing the denial of a motion to suppress we consider the facts in the light most favorable to the Commonwealth. <u>Fore v. Commonwealth</u>, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980). Patton bears the burden on appeal to show that the trial court committed reversible error when it denied his motion to suppress. <u>Id.</u> We are bound by the trial court's factual

findings unless those findings are "plainly wrong or unsupported by the evidence." Pyramid Development, L.L.C. v. D & J Associates, 262 Va. 750, 753, 553 S.E.2d 725, 727 (2001). However, we review the trial court's application of the law *de novo*. Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005). Furthermore, when reviewing the validity of a warrant and its supporting affidavit, the "magistrate's determination of probable cause should be paid great deference by reviewing courts." Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)) (internal quotation marks omitted). Because of the great deference we give to the magistrate's determination of probable cause, "'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" Ward v. Commonwealth, 47 Va. App. 733, 744, 627 S.E.2d 520, 526 (2006) (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)).

Patton contends that the affidavit in this case fails to establish a reasonable likelihood that cocaine or related contraband would be found at the apartment on Quantrell Avenue and that the evidence seized from the apartment should therefore be suppressed. He argues that no facts were presented in the affidavit linking the premises with any current or past criminal activity or the presence of any contraband. Instead, Patton contends, the only nexus to the apartment was the fact that packages containing cocaine were addressed to the apartment. He further argues that the officers exceeded the scope of the warrant in seizing pay stubs from the apartment, and also seeks suppression of the evidence based on an alleged violation of the "knock and announce" rule. The Commonwealth, on the other hand, contends that the affidavit provided the magistrate with a substantial basis for finding that there was probable cause to believe that evidence of drug dealing would be found at the apartment. We conclude that the information in the affidavit provided sufficient probable cause to justify the issuance of the warrant and that the warrant's language was broad enough to include all of the items at issue in this case.

- 6 -

Probable Cause

According to the Fourth Amendment of the United States Constitution, a search warrant must be based upon probable cause. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). In making the probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a particular crime will be found in a particular place." Gates, 462 U.S. at 238.

The magistrate's probable cause determination "must be based on objective facts, and reasonable inferences drawn from those facts." Sowers v. Commonwealth, 49 Va. App. 588, 596, 643 S.E.2d 506, 510 (2007) (internal citations omitted). "[T]he crucial element [in the probable cause determination] is . . . whether it is reasonable to believe that the items to be seized will be found in the place to be searched." Adams v. Commonwealth, 48 Va. App. 737, 750, 635 S.E.2d 20, 26 (2006). The magistrate need only have a substantial basis for this belief. McCary v. Commonwealth, 228 Va. App. 219, 230, 321 S.E.2d 637, 643 (1984). Moreover, the magistrate may draw reasonable inferences from the information supplied to him by an officer in deciding whether probable cause to issue the warrant exists. Gwinn v. Commonwealth, 16 Va. App. 972, 975, 434 S.E.2d 901, 904 (1993).

The warrant authorized a search for "[c]ocaine, any paraphernalia related to the sale or use of cocaine, any records, documents or electronic storage devices related to the sale or use of cocaine, and any monies or proceeds from the sale of cocaine." The relevant facts before the magistrate were: 1) packages containing approximately one pound of cocaine were addressed to the apartment; 2) the packages were sent from Trinidad and Tobago, a known source country for cocaine coming into the United States; and 3) the address was located in a high crime area of Alexandria.

The magistrate that issued this warrant was entitled to infer that a large quantity of cocaine – in this case, one pound—was intended for distribution. In fact, Sergeant George stated at the suppression hearing that this was the most cocaine he had seen delivered at one time in Alexandria during the five years he has been supervising the vice and crime section. Moreover, the packages were sent from a country recognized by United States Immigration and Customs Enforcement as a source of cocaine to a high crime neighborhood in Alexandria. We conclude that the information in the affidavit provided sufficient probable cause for the warrant to issue because the magistrate could reasonably infer from these facts that there was a drug dealing operation going on at the residence, thus creating probable cause for finding evidence of unlawful drug transactions at the home, including drugs, drug paraphernalia, records, documents, and money. See Gwinn, 16 Va. App. at 976, 434 S.E.2d at 904 ("In the case of drug dealers, evidence of that on-going criminal activity is likely to be found where the dealer resides.").[2]

Scope of the Warrant

Patton also argues that the pay stubs that were seized from the apartment were not included in the scope of the warrant. Once again, we disagree and affirm the decision of the trial court. The warrant in this case authorized the seizure of, *inter alia*, "*any* records, documents or electronic storage devices related to the sale or use of cocaine." (Emphasis added).

"The permissible scope of a search is limited by the terms of the warrant pursuant to which it is conducted." Kearney v. Commonwealth, 4 Va. App. 202, 204, 355 S.E.2d 897, 898 (1987). The restriction "that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant

---

[2] Because we conclude that the warrant was supported by probable cause, we need not address Patton's argument regarding the good faith exception to the warrant requirement.

describing another." Marron v. United States, 275 U.S. 192, 196 (1927).[3]  Logically, "[o]fficers executing a search warrant are 'required to interpret it,'" because they must determine whether the things that they uncover in the search are the things that are to be seized under the warrant; however "they are 'not obliged to interpret [the warrant] narrowly.'" United States v. Stiver, 9 F.3d 298, 302 (3d Cir. 1993) (quoting Hessel v. O'Hearn, 977 F.2d 299, 302 (7th Cir. 1992)); see also Strauss v. Stynchcombe, 165 S.E.2d 302, 307 (Ga. 1968) (discussing the practical need for an officer executing a search warrant to use his or her judgment to determine what things are subject to seizure under a particular warrant and stating, "[i]f for example, the warrant calls for the search and seizure of intoxicating liquors . . . the executing officer may be required to determine as a matter of fact which of several different containers found . . . contain intoxicating liquors or which contain other beverages . . .").

Thus, the issue before us is whether, on these facts, the pay stubs were documents related to the sale or use of cocaine.  Simply put, we conclude that the pay stubs were within the scope of the warrant because they constituted evidence of Patton's legitimate income—a vitally important piece of information that is related to the sale of cocaine and a large cocaine distribution conspiracy, especially in light of the wire transfer documents, also seized by police during the search, indicating that significant sums of money had been wire transferred to Trinidad and Tobago.  A police officer, familiar with the financial structure of drug dealing operations, would reasonably know that this kind of record would be related to drug dealing. Moreover, the pay stubs also provided a link between the cocaine that had been mailed to the

---

[3] Patton did not argue that this search warrant was overbroad and failed to meet the Fourth Amendment's particularity requirement; rather, he argued that the "seizure of pay stubs was well beyond the scope of the warrant and was thus illegal[,] because "[t]he only documents authorized to be seized were only those related to the sale or use of cocaine."

apartment and the occupant of the apartment. Hence, the pay stubs were documents related to the sale of cocaine in that they indicated the identity of the likely cocaine dealer.[4]

### Knock and Announce

Patton's argument that the evidence in this case should be suppressed because of a violation of the "knock and announce" rule is without merit. In Perry v. Commonwealth, 49 Va. App. 65, 636 S.E.2d 891 (2006), we explicitly held that "the remedy for [a violation of the knock and announce rule] is not the suppression of the evidence recovered from appellant's residence." Perry, 49 Va. App. at 67, 636 S.E.2d at 893 (citing Hudson v. Michigan, 126 S. Ct. 2159, 2165 (2006)).

### Exclusion of Evidence

Finally, Patton argues that the trial court erred by refusing to exclude evidence of wire transfers that he argues were "remote and unconnected to the charges." The wire transfer evidence in question showed that Patton had, between March 1, 2002 and February 7, 2005, wired approximately $25,000 to Trinidad and Tobago.

The admissibility of evidence rests in the sound discretion of the trial court. Breeden v. Commonwealth, 43 Va. App. 169, 184, 596 S.E.2d 563, 570 (2004). "The trial court may consider remoteness [in determining the admissibility of evidence] but it should not withhold . . . evidence solely on the basis of remoteness unless the expanse of time has truly obliterated all probative value. This determination is committed to the sound discretion of the trial court" as

---

[4] Patton mentions in passing on brief that the "[a]dmission of the pay stubs was a significant error [because] [w]ithout these stubs, there was no proof that linked the defendant with the address at Greensboro Drive, and the Commonwealth argued that that shipment helped show the defendant's involvement in the conspiracy to distribute cocaine." However, the issue Patton preserved for appeal and on which we granted an appeal was not the admissibility of the pay stubs. Instead, it was whether the pay stubs were within the scope of the warrant. Thus, we do not address this issue. See Rule 5A:12(c) ("Only questions presented in the petition for appeal will be noticed by the Court of Appeals.").

well.  Lafon v. Commonwealth, 17 Va. App. 411, 419, 438 S.E.2d 279, 284 (1993) (citing

Brown v. Commonwealth, 3 Va. App. 182, 186, 348 S.E.2d 849, 852 (1986), aff'd, 238 Va. 213,

381 S.E.2d 225 (1989)).

The jury convicted Patton of possession of cocaine with the intent to sell, conspiracy to

distribute cocaine, and transporting cocaine into the Commonwealth with the intent to distribute

it.  The events that took place on both February 10, 2005 and March 17, 2005 constituted

evidence of those crimes.  The last wire transfer took place only three days before the first

package arrived in the D.C. area on February 10.  Here, the wire transfer evidence is not so

remote in time as to be without probative value; nor was it speculative.  Rather, evidence that

Patton sent money to Trinidad and Tobago, viewed in concert with evidence that packages

addressed to him and containing cocaine were sent from Trinidad and Tobago, was highly

probative in this case.  The trial court properly allowed the jury to consider this evidence.

### III.  CONCLUSION

For the foregoing reasons, we affirm Patton's convictions.

<u>Affirmed.</u>