COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Kelsey and Senior Judge Coleman
Argued at Richmond, Virginia


BRYANT BOGLE
                                                MEMORANDUM OPINION[*] BY
v.      Record No. 2522-06-2                JUDGE ROBERT P. FRANK
                                                APRIL 15, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Horace F. Hunter for appellant.

Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
Attorney General; Karri B. Atwood, Assistant Attorney General, on brief),
for appellee.


Bryant Bogle, appellant, was convicted of possession of cocaine with intent to distribute,

in violation of Code § 18.2-248, and possession of cocaine with intent to distribute within 1000

feet of a school, in violation of Code § 18.2-255.2. On appeal, appellant contends that the trial

court erred in denying his motion to suppress cocaine recovered by a police officer during a

pat-down search. Appellant argues that the officer did not have probable cause to seize the

cocaine, thus this seizure was unconstitutional under the Fourth Amendment. For the reasons

stated, we agree and reverse appellant's convictions.

BACKGROUND

On October 14, 2004, Detective David Naoroz of the Richmond City Police Department

was one of six plainclothes officers in the narcotics unit conducting daytime surveillance in the

city. Detective Naoroz and two other officers waited in an alley approximately one block away

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

while other officers monitored an intersection in a "known drug area," where street drug transactions are "very" common.

Those officers conducting surveillance observed a hand-to-hand transaction involving three individuals.[1] Detective Naoroz received a broadcast of this information over his radio, relaying physical descriptions of all three. Seven minutes later, Detective Naoroz observed two of the three individuals described entering a market near the alley where he was waiting. Appellant was one of these two individuals.

Detective Naoroz and two other officers approached appellant and his companion as they left the market. The officers identified themselves and informed appellant and his companion that the officers wanted "to get their identification to find out who they were." Detective Naoroz asked appellant if he could pat appellant down to check for "any weapons or anything illegal." Appellant consented to the pat down.

As Detective Naoroz conducted the pat-down search, he felt a plastic bag in appellant's right front pocket. At the hearing on the motion to suppress, Detective Naoroz first described that he felt "[w]hat [he] believed to be a knotted bag of contraband." He expanded his answer, saying that he felt "[w]hat [he] believed to be a plastic bag with what [he] believed to be, based on the area and [his] training and experience, contraband inside." The Commonwealth's attorney asked Detective Naoroz to explain what he felt:

> Q:  Was it one rock? Did you feel one rock?
>
> A:  I didn't go beyond really just feeling on the outside of the clothes until I asked him what it was and he said a cell phone, and that's when I said no, not the phone.

---

[1] The officers did not see what, if anything was exchanged, nor was there any evidence that appellant was specifically involved in the transaction, or whether he was merely present when it took place.

Detective Naoroz did not move or manipulate the item, but felt "like a smush feeling of how [he] understand[s] baggies to feel in pockets."

On cross-examination, Detective Naoroz illustrated again exactly what he had detected during his pat-down search of appellant.

> Q: Now, with respect to this pat-down, you testified that you immediately felt what was contraband?
>
> A: What I believed to be contraband.
>
> Q: What you believed to be contraband. But what you really felt was just plastic, correct?
>
> A: Plastic with a substance in there.
>
> Q: Which could have been any substance. You didn't immediately feel, oh that's crack cocaine or –
>
> A: No.
>
> Q: -- that that's heroin or that that's powder cocaine or that that's marijuana or that those are pills?
>
> A: I just believed it to be contraband.
>
> Q: Because it was plastic?
>
> A: Yes.
>
> Q: The only thing that you were able to detect as a matter of touch was that there was plastic in his pocket?
>
> A: And what I believed to be a cell phone.
>
> Q: But that was it?
>
> A: Yes.
>
> Q: And you conjectured I guess that it was contraband, whether it was marijuana, cocaine, heroin or something, just based on it being plastic in his pocket in that area and the information that you had from the other officers?
>
> A: Yes.

Q: So you're certainly not testifying to this Court that you felt what was immediately apparent to be crack cocaine?

A: Just contraband.

After feeling the plastic bag and the cell phone, Detective Naoroz asked appellant what was in his pocket. Appellant responded that it was his cell phone. "He immediately began shaking" and "sweating pretty profusely." Detective Naoroz told appellant he was not talking about the cell phone, and again asked appellant what was in his pocket. Appellant replied only that his cell phone was in his pocket. At that time, Detective Naoroz reached into appellant's pocket and recovered a plastic baggie "with numerous rocks inside of it." These rocks were packaged in individual corners cut from plastic baggies, and then placed in a larger plastic sandwich bag that was knotted. Detective Naoroz testified at the hearing on the motion to suppress that this is the way that narcotics are frequently packaged in the Richmond area. The rocks were later determined to be crack cocaine.

The trial court ruled that, "in light of the totality of the circumstances, it was reasonable for the officer to believe that the substance in the pocket was contraband." The trial court placed particular emphasis on appellant's reaction to Detective Naoroz's questions about the plastic bag in his pocket. Based on these findings, the trial court denied appellant's motion to suppress.

This appeal follows.

ANALYSIS

On appeal, appellant contends that Detective Naoroz did not have probable cause under the "plain feel doctrine" to search his pocket and remove the plastic baggie, as "the character of the item was not immediately apparent from the pat down search."[2] Thus, appellant contends,

_____

[2] Appellant does not question the propriety of the stop, the pat-down search, or the validity of his consent to this search. He challenges only whether Detective Naoroz had probable cause to seize the items in his pocket. Thus, for purposes of this opinion, we will assume that appellant validly consented to a pat-down search.

- 4 -

Detective Naoroz did not have probable cause to seize the contents of his pocket and those contents should have been suppressed.

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [appellant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). While we review *de novo* the ultimate questions of reasonable suspicion and probable cause, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

"[P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983).

Probable cause is a "flexible, common-sense" standard that does not "demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983). Probable cause deals with probabilities that are not "technical" but are "the factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act." Garza v. Commonwealth, 228 Va. 559, 564, 323 S.E.2d 127, 129 (1984).

> During an investigative stop authorized under Terry [v. Ohio, 392 U.S. 1 (1968)], an officer may conduct a limited search for concealed weapons if the officer reasonably believes that a criminal suspect may be armed and dangerous. The purpose of this

"pat down" search is not to uncover evidence of criminal activity, but to permit the officer to conduct his investigation without encountering a violent response.

Murphy v. Commonwealth, 264 Va. 568, 573-74, 570 S.E.2d 836, 839 (2002) (other citations omitted).

In Minnesota v. Dickerson, 508 U.S. 366 (1993), the Supreme Court discussed the seizure of contraband detected by sense of touch during a pat-down search. The Court stated:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

Id. at 375-76. "However, when the character of the item is not immediately apparent from the 'pat down' search, and the officer does not reasonably suspect that the item is a weapon, further search regarding the item is not allowed because such an evidentiary search is unrelated to the justification for the frisk." Murphy, 264 Va. at 574, 570 S.E.2d at 839.

In Murphy, 264 Va. 568, 570 S.E.2d 836, officers executed a search warrant for various drugs and other items related to the drug trade at a residence where Murphy was present. Id. at 571, 570 S.E.2d at 837. Murphy was not named in the search warrant as a person officers were authorized to search; instead, officers "frisked" Murphy for weapons as part of securing the scene. Id. An officer "felt a bulge in the left front pocket of Murphy's pants, and sensed that the object was a 'plastic baggy.'" Id. Based on his training and experience, including his knowledge of the way that marijuana is commonly packaged, the officer "concluded that the bag contained marijuana." Id. The officer seized the bag from Murphy's pocket. Id.

The Commonwealth in Murphy argued that, as the information contained in the search warrant provided probable cause to believe there was marijuana on the premises, this fact,

coupled with the officer's training and experience, led him to reasonably believe that the bulging plastic bag in Murphy's pocket contained marijuana. Id. at 572, 570 S.E.2d at 838. The Supreme Court disagreed, holding that the officer's actions "exceeded the permissible scope of that limited search [for weapons]." Id. at 574, 570 S.E.2d at 839.

> [The officer] did not testify that he sensed from touching Murphy's pocket that the item held there was a weapon, nor did he state that the character of the object as marijuana was immediately apparent to him from the "pat down" search.
>
> Instead, [the officer's] testimony established only that the character of the object as a plastic bag was immediately apparent from the "pat down" search, and that he knew from his training and experience that plastic bags often are used to package marijuana. This information was insufficient under the holding in Dickerson to establish probable cause to search Murphy's pocket because [the officer's] conclusion that the bag contained marijuana was not based on his tactile perception of the bag's contents. Rather, his sense of touch revealed only that there was a plastic bag in Murphy's pocket. Thus, [the officer] lacked probable cause to seize the item from Murphy's pocket because the character of the bag's contents as contraband was not immediately apparent from the frisk.

Id. at 574-75, 570 S.E.2d at 839.

Similarly, Detective Naoroz testified only that he felt a plastic bag containing a substance, which, based on his training and experience with the packaging of drugs and the location of the stop, he believed to be contraband. The Commonwealth argues that these circumstances, coupled with appellant's "suspicious behavior" and the prior hand-to-hand transaction, combine to provide Detective Naoroz with the reasonable belief that the plastic bag contained contraband. We disagree.

We find the instant case indistinguishable from Murphy; there, as here, the officer testified that he felt a plastic bag in a pocket. Neither Detective Naoroz nor the officer in Murphy were able to testify about what they felt inside of the plastic bag. The mere presence of a plastic bag in appellant's pocket, containing some unknown substance, is not enough to form

the probable cause to believe that the substance is contraband. A plastic bag could accommodate any number of items.

Further, the circumstances surrounding the search of appellant were not sufficient to indicate that the plastic bag contained contraband. The Supreme Court of Virginia recently acknowledged that, while there were circumstances in <u>Murphy</u> that could be suggestive of the presence of contraband, these circumstances were not sufficient to provide the officer with probable cause to seize the bag he detected. <u>Cost v. Commonwealth</u>, 275 Va. 246, 252, 657 S.E.2d 505, 508 (2008) (noting that "in [<u>Murphy</u>], we held that marijuana contained in a plastic bag in the suspect's pants pocket was illegally seized during a pat-down search because the character of the baggie's contents as contraband was not immediately apparent," despite the fact that Murphy was present on the premises where officers where executing a search warrant for suspected drug activity).

Because we find that the incriminating character of the substance in the plastic bag was not immediately apparent to Detective Naoroz based on his tactile perception and the surrounding circumstances were not sufficient to indicate the presence of contraband in appellant's pocket, we hold that the trial court erred in denying appellant's motion to suppress. Thus, we reverse appellant's convictions and remand for further proceedings if the Commonwealth be so advised.

<u>Reversed and remanded.</u>

Kelsey, J., dissenting.

I accept, at least *arguendo*, that the scope of a consensual pat down, when the words of consent include this rather precise term, does not by itself extend to searching inside closed pockets. See, e.g., Rice v. State, 219 S.W.3d 672, 674 n.1 (Ark. App. 2005).[3] This conclusion, however, means only that the officer needed probable cause to search inside Bogle's pocket at the moment he did so. Like the trial judge, I believe the officer had probable cause.

Probable cause is not calibrated to "deal with hard certainties, but with probabilities." Slayton v. Commonwealth, 41 Va. App. 101, 106, 582 S.E.2d 448, 450 (2003) (citation omitted). Nor does it "demand any showing that such a belief be correct or more likely true than false." Id. (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality)). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal brackets omitted). Not even a "prima facie showing" of criminality is required. Illinois v. Gates, 462 U.S. 213, 235 (1983) (citation omitted).

Instead, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 243 n.13. Police officers, therefore, need not be "possessed of near certainty as to the seizable nature of the items." Brown, 460 U.S. at 741. "By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically

---

[3] But where, as here, the object of the consensual pat down includes drugs as well as weapons, the officer's pat down need not be limited to weapons only. While it may not be necessary to manipulate a small object in a plastic bag to determine if it is a switchblade or a firearm, that is exactly what an officer would need to do to determine if the object might be a rock of crack cocaine. At any rate, the scope issue is entirely academic here given that the officer did not manipulate the plastic bag during the pat down to discern its likely contents. The only question we must answer is whether the officer had probable cause to search inside Bogle's pocket following the consensual pat down.

more rigorous definition of probable cause than the security of our citizens' demands." Gates, 462 U.S. at 243 n.13. "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." Id.

Under this standard, probable cause authorized the officer's search inside Bogle's pocket for suspected drugs immediately following the consensual pat down. The narcotics surveillance team observed a "group" of three individuals in a "high drug area" where illegal "street transactions" were "very" common. "One individual was making a hand-to-hand transaction. The other two individuals were with that person." The officer determined that Bogle was a member of this "group" of three. From his experience with open-air drug markets, the officer understood that "one person usually deals, one person holds the drugs, one person holds the money, or you have separate locations and [no one person] keep[s] all three."

Minutes later, the officer initiated a consensual encounter with Bogle and asked for his permission to conduct a pat down for weapons and drugs. During the consensual pat down, the officer asked Bogle what he had in his right front pocket. Bogle "immediately began shaking" and said only that he had a cell phone in that pocket. Patting down the pocket, the officer felt a cell phone. But he also felt something Bogle did not acknowledge: a "knotted" plastic bag with a discernable "substance" inside. When the officer specifically asked about the bag, Bogle "immediately started physically shaking as well as sweating pretty profusely." When the officer again specifically asked "what it was," Bogle said "it was his cell phone." The officer, a police detective who had performed hundreds of pat downs and had been specially trained in interdicting illegal drugs, had heard enough. He reached into Bogle's pocket and pulled out a knotted, plastic bag containing crack cocaine.

Viewed in their totality, these circumstances established a "substantial chance," Gates, 462 U.S. at 243 n.13, that the bag in Bogle's pocket likely contained illegal drugs. When separated out, the circumstances included:

- the officer's "personal experience" with the particular area and his personal knowledge of it as a "high drug area" where "street transactions" were very common;

- the surveillance team's report of a hand-to-hand transaction involving a group of three which included Bogle;

- Bogle's physical shaking episode when the officer merely asked what was in his pocket;

- Bogle's refusal to acknowledge that he had anything in his pocket except a cell phone;

- the second episode of physical shaking, this time accompanied by profuse sweating, when the officer specifically asked about the plastic bag; and

- Bogle's false statement that the plastic bag was only his cell phone.

To conclude this cluster of circumstances rises no higher than improbable cause would be to apply, in fact if not in name, a "preponderance of the evidence" standard, Pringle, 540 U.S. at 371, or, worse still, some unstated requirement that the officer have "near certainty," Brown, 460 U.S. at 741, before confiscating what any reasonably trained officer would already know to be illegal drugs. No doubt, to some, these probabilistic distinctions involve a highly ambitious exercise in line drawing. Perhaps so. But as Justice Holmes famously said, where to draw the line "is the question in pretty much everything worth arguing in the law." Irwin v. Gavit, 268 U.S. 161, 168 (1925).

I respectfully dissent.